**In re DUNNE TRUCKING CO., An Iowa Corporation, Debtor.**

**DUNNE TRUCKING CO., Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE OF the UNITED STATES OF AMERICA, and L.E. Ellison, Defendants.**

Bankruptcy No. 82–01010.
Adv. No. 82–0083.

United States Bankruptcy Court, N.D. Iowa.

Aug. 3, 1983.

Victor V. Sprengelmeyer, Dubuque, Iowa, for plaintiff.

James H. Reynolds, Dubuque, Iowa, for defendants.

WILLIAM W. THINNES, Bankruptcy Judge.

This matter is before the Court on Plaintiff-Debtor Dunne Trucking Co.'s complaint to determine whether the Internal Revenue Service's post-petition collection and retention of Debtor's checking account, pursuant to a pre-petition Notice of Levy was in violation of the turnover provisions of

§ 542 of the Bankruptcy Code. The matter came on before the Court for hearing.

The parties submitted a Statement of Agreed Facts prior to trial. At the close of trial, the Court took the matter under advisement. Attorney for Plaintiff submitted a Memorandum and Argument. Attorney for Defendants submitted a Brief and supporting cases. The Court, having been fully advised, now makes the following Findings of Fact, Conclusions of Law, and Orders:

### FINDINGS OF FACT

The parties stipulated to the following facts:

1. That the Debtor is an Iowa Corporation which maintained a general checking account, Account No. 12–659–4, at The First National Bank of Dubuque, Dubuque, Iowa.

2. That on or about August 31, 1981, the Defendant, Internal Revenue Service, assessed certain taxes for withholding and employment taxes, pursuant to Chapter 64 of the Internal Revenue Code, claiming sums in excess of $4,000.00.

3. That on January 28, 1982, the Internal Revenue Service, by its Agent, Defendant L.E. Ellison, served a Notice of Levy upon L. Richard Winter, Senior Vice-President of The First National Bank of Dubuque, claiming all of the funds of Debtor on deposit in the above described account, at 1:55 P.M.

4. That on said date and time Agent Ellison demanded immediate delivery of the balance in said checking account, which demand was refused by Mr. L. Richard Winter, who advised Agent Ellison that the Bank could not determine the correct balance in said checking account until completion of posting of items presented for payment against said account on that banking day. Mr. Winter further informed Agent Ellison that the posting process would be completed by the following bank day, and that the Bank would issue a check for the balance of the account and mail it to Agent Ellison.

5. That on the 29th day of January, 1982, at 8:00 A.M., the Debtor's Voluntary Petition was filed in the Office of the Bankruptcy Clerk.

6. That The First National Bank of Dubuque, sometime after 8:00 A.M., and before Noon, issued its check # 6652 to the Internal Revenue Service for $3,704.79, being the entire balance in Debtor's checking account, and mailed it to Agent Ellison at the Internal Revenue Service Office in Davenport, Iowa.

### CONCLUSIONS OF LAW

1. That as of the date of the filing of the petition, the Service did not have actual possession of the Debtor's checking account.

2. That, absent Notice of Seizure prior to filing of the bankruptcy petition, the Notice of Levy did not complete the levy processes on the checking account.

3. That the Notice of Levy by itself did not extinguish the Debtor's rights in the checking account.

4. That despite the Service's actual possession of the account subsequent to the filing of the bankruptcy petition, the account was property of the estate within the meaning of section 541 of the Bankruptcy Code.

5. That the account is property that the trustee may use, sell, or lease within the meaning of section 363 of the Bankruptcy Code.

6. That the account is therefore subject to the turnover provisions of section 542 of the Bankruptcy Code.

7. That the Service is a lien creditor of the estate and therefore may request adequate protection of its interest in the debtor's checking account under section 363(e) of the Bankruptcy Code.

8. That the Debtor is not entitled to costs or other relief in its action for turnover of the account to the estate.

### ORDERS

IT IS THEREFORE ORDERED that the Plaintiff's Complaint is sustained.

IT IS FURTHER ORDERED that a hearing will be scheduled on the issue of whether the Debtor, Dunne Trucking Co., can afford the Defendant, Internal Revenue Service, adequate protection of its interest in the $3,704.79 of the account.

IT IS FURTHER ORDERED that until such hearing on adequate protection, the Defendant, Internal Revenue Service, shall retain possession of the $3,704.79, subject to Order of this Court.

IT IS FURTHER ORDERED that no costs or further relief will be awarded in this action.

## MEMORANDUM

Plaintiff Dunne Trucking Co. (debtor) is an Iowa corporation with its principal place of business at Zwingle, Jackson County, Iowa. The Defendant Internal Revenue Service (the Service) is the revenue collecting agency of the United States employing the revenue officer (the Agent) whose acts resulted in this proceeding.

■ In August of 1981, the Service assessed certain back taxes against the debtor claiming a delinquency in excess of $4,000.[1] On January 28, 1982, the Agent served a Notice of Levy on the Vice-President of the First National Bank of Dubuque, Dubuque, Iowa (the Bank) where the debtor maintained a general checking account (the account). The Bank did not immediately pay over the funds contained in the account. Rather, the Bank's Vice-President informed the Agent that the Bank would not deliver the funds to the Service until the posting process was completed on items

that were presented that day.[2] At 8:00 a.m. the next day, January 29th, the debtor filed its Chapter 11 petition with the clerk's office at the Bankruptcy Court. Sometime between 8:00 and Noon on January 29th, the Bank issued and mailed a non-negotiable check, for the entire balance of $3,704.79 in the account, to the Service's offices located in Davenport, Iowa.

■ The facts as stated present the issue of whether the Service's Notice of Levy served on the Bank was sufficient to transfer all of the debtor's ownership interest in the account of the Service, such that the Service was not subject to a turnover order under 11 U.S.C. § 542 (Supp.V 1981). The Service contends that service of Notice of Levy, as provided for in I.R.C. § 6331 (CCH 1981) amounted to a pre-petition transfer of ownership, and that no rights remained in the account to pass to the debtor's estate. The debtor asserts, that the Notice of Levy was not equivalent to levy and seizure. Debtor further asserts that actual physical seizure prior to filing was required in order to effect a seizure of the property, and that the post-petition collection and retention of the account was a violation of the automatic stay provision of 11 U.S.C. § 362 (Supp.V 1981),[3] since the property rights had passed to the estate. The resolution of this issue as presented depends on an understanding of the Service's tax lien procedures and any applicable provisions regarding "property of the estate" of the new Bankruptcy Code.

## I. The Service's Lien and Levy Procedures

The Service in this case proceeded under the levy and distraint provisions of I.R.C.

1. The Service has not alleged, nor has the Debtor challenged, the procedures that were employed in the assessment process. However, a defect in such procedures would have the effect of invalidating the general tax lien. See M. Saltzman, IRS PRACTICE AND PROCEDURE ¶ 14.04 (1981).

2. It is not clear whether the statement by the Vice-President was intended to mean that the Bank would accept further checks against the account after the Notice of Levy was served. If it does mean that further checks would be honored, then it is clear that the Notice of Levy in no way affected Debtor's dominion and control over the account. Since the Bank accepted

the Notice, however, it would appear that the account was frozen, subject only to checks already in the Bank's possession.

3. Once a petition is filed in the Bankruptcy Court, the automatic stay of section 362 will protect the debtor and property of the estate from any entity, such as the Service, which attempts to proceed to recover claims that the entity might have against the debtor. If, as the Service contends, the debtor lost all rights in the account, the § 362 stay would, by its own terms, be inapplicable to the account in this case. 11 U.S.C. § 362 (Supp.V 1981).

§ 6331 (CCH 1981). Section 6331 states in part:

(a) Authority of Secretary

If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . .

(b) Seizure and sale of property

The term "levy" as used in this title includes the power of distraint and seizure by any means. . . . In any case in which the Secretary may levy upon property or rights to property he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

I.R.C. § 6331(a) and (b) (CCH 1981).

When a tax is assessed, a debt is created and the Service becomes a creditor of the delinquent taxpayer.[4] By virtue of assessment, demand, and a refusal to pay, a general lien arises automatically on all of a taxpayer's property and rights to property. I.R.C. § 6321 (CCH 1981). The general lien does not by itself deprive the taxpayer of property, but once it exists, the Service may seize and sell the taxpayer's property.[5] The lien on the taxpayer's property is perfected as against creditors, purchasers, holders of security interests, mechanic's lienors, and judgment creditors by filing a notice of tax lien.[6] If a tax lien is not so perfected then those persons are protected from the effect of the tax lien by virtue of I.R.C. § 6323 (CCH 1981).[7]

The Service has certain specific procedures which it follows in the assessment and collection processes. Generally, once a deficiency is discovered, unless the taxpayer acknowledges liability, notice of the deficiency is sent to allow the taxpayer 90 days to challenge the tax. After that period, a formal assessment is made, and within 60 days additional notice and demand for payment are sent to the taxpayer. A defect in the above procedure will have the effect of voiding the lien and any collections made pursuant to the lien. *See* M. Saltzman, IRS PRACTICE AND PROCEDURE ¶ 14.06 at 14–18, 14–29 (1981). After notice and demand, the general lien attaches, I.R.C. § 6321 (CCH 1981), and the Service can proceed with a levy and sale under I.R.C. § 6331(a) (CCH 1981). "Although Section 6331 grants the Service extraordinary power to seize property to satisfy a tax liability, it does not prescribe how a levy should be made. The levy statute only says that levy 'includes the power of distraint and seizure by any means. . . .' While the statute grants the Service the power of distraint and seizure 'by any means,' as a matter of practice, the Service serves a notice of levy to seize property."[8]

After levy, but before sale, a notice of seizure and a notice of sale must be served upon the owner or holder of rights to have a valid sale. I.R.C. § 6335 (CCH 1981). Failure of, or defect in, either notice causes the sale to be invalid. *See Johnson v. Gartlan Jr.*, 334 F.Supp. 438 (1971), rev'd on another issue, 470 F.2d 1104

---

**4.** The information to follow was obtained from M. Saltzman, IRS PRACTICE AND PROCEDURE ¶ 14.03–¶ 14.08, ¶ 14.10–¶ 14.17 (1981).

**5.** I.R.C. § 6331(a), however, provides that the Service must wait 10 days after notice and demand, to allow the delinquent taxpayer time to pay, before it can proceed with levy and seizure.

**6.** It is not clear from the stipulated facts whether this was done in this case.

**7.** A trustee in bankruptcy may avoid the fixing of a statutory lien on property of the debtor if the lien is not perfected as of the date of filing of the bankruptcy petition. *See* D. Nowak, TURNOVER FOLLOWING PREPETITION LEVY OF DISTRAINT UNDER BANKRUPTCY CODE § 542, 55 Am.Bankr.L.J. 313, 320 (1983).

**8.** M. Saltzman, *supra,* ¶ 14.12 at 14–54. *See also* Treas.Reg. § 301.6331–1(a)(1) (CCH 1981). For levies made after December 1982, § 6331(d)(1) (CCH 1983) requires that additional pre-seizure written notice be sent to the taxpayer.

(1973); *Reece v. Scoggins,* 506 F.2d 967 (1975); *see also* M. Saltzman, *supra,* at ¶ 14.17. Although a sale is not possible when the property is cash or a cash equivalent, *see In re Cyber Electric Co.,* 18 B.R. 921 Bankr.L.Rptr. (CCH) ¶ 69,177 (Bkrtcy. 1983), notice of seizure still appears to be a limitation on the Service's levy authority under § 6331(a). This is because a levy is not considered complete unless a notice of seizure is sent to the owner or holder of rights to property levied upon. I.R.C. § 6502(b) (CCH 1981). If there is a delay in this notice, the statute of limitations for the collection of tax after assessment will continue to run, rendering the tax ultimately uncollectible. *Id.* § 6502(a); *see also* M. Saltzman, *supra,* ¶ 14.13, at 14–57. Notice of seizure appears then to be not only a condition precedent to an effective sale, but also to be completion of the levy proceedings. The notice set forth in I.R.C. § 6335 (CCH 1981) "can be viewed as protection of the taxpayer's continued interest in the seized property." *In re Bush Gardens,* 10 B.R. 506, 510; 79–2 U.S. Tax Cas. ¶ 9736 at 88730; 5 Bankr.Ct.Dec. (CRR) 1023, 1025 (Bkrtcy.1979).

▆ Since the debtor's account in this case was not actually seized, and therefore no notice of seizure could be sent, until after filing of the petition in bankruptcy, the 'levy' effected by the Notice was not complete under I.R.C. § 6335(a) (CCH 1981) and I.R.C. § 6502 (CCH 1981). It is not clear then, that Dunne Trucking Co.'s rights in the account were affected by Notice of Levy, although the seizure did ultimately remove the money from the debtor's possession after the petition was filed.[9]

## II. *Property of the Estate*

A voluntary case under Chapter 11 is commenced by the filing with the Bankruptcy Court of a petition by a debtor. 11 U.S.C. § 301 (Supp.V 1981). The filing of a § 301 petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (Supp.V 1981). "The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action (See Bankruptcy Act section 70a(b)), and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 89 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 6323.

▆ The § 541 estate encompasses more than just property in the debtor's possession at the time of the filing of the Bankruptcy petition. This is different from the concept of 'property of the estate' as it was defined under the old Bankruptcy Act. 11 U.S.C. § 70a (1938). Under the old Act, a distinction was made between summary and plenary jurisdiction in reaching a decision as to whether property was in a debtor's estate. A bankruptcy court possessed only summary jurisdiction over property, which limited the court's power to that property in the debtor's possession when the liquidation petition was filed. *Phelps v. United States,* 421 U.S. 330, 335–36, 95 S.Ct. 1728, 1731–32, 44 L.Ed.2d 201 (1975); *In the Matter of Pittsburgh Penguin Partners,* 598 F.2d 1299, 1301–02 (3rd Cir.1979). The new Bankruptcy Code abolishes the distinction between summary and plenary jurisdiction and expands the bankruptcy jurisdiction beyond the possession limitation. *See* H.R. Rep. No. 95–595, 95th Cong., 2nd Sess. 48–49 (1977). For example, section 542(a) of the Bankruptcy Code requires an "entity, other than a custodian, in possession, custody or control, during the case, of property that the trustee may use, sell, or lease un-

---

9. It could be argued that notice of seizure is merely administrative and does not substantively affect the Service's rights to the property. However, levy, as defined under I.R.C. § 6502, triggers not only the debtor's rights of redemption, but also the rights of any other party with an interest in the seized property.

*See* I.R.C. §§ 6337 and 6532 (CCH 1981). If these rights are not triggered, Notice of Levy in this situation would give the Service an advantage that, in at least certain circumstances, is not warranted under the Internal Revenue Code. *See* I.R.C. § 6323 (CCH 1981); *cf.* n. 7 *supra.*

der section 363" to deliver that property to the trustee.[10] 11 U.S.C. § 542(a) (Supp.V 1981). Section 363 allows a trustee to use, sell, or lease property of the estate, including cash collateral, as defined under subsection (a), subject to certain conditions for the protection of creditors with an interest in the property.[11] As a result, if property is considered "property of the estate" under section 541, it is property that a trustee may "use, sell, or lease," within section 363, and the property is subject to turnover under section 542. 11 U.S.C. §§ 363, 541, 542 (Supp.V 1981).

Prior to the decision in *United States v. Whiting Pools*, —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), several courts in construing sections 542 and 363 in a tax levy situation had concluded that the term "interests of the debtor" as used in section 541 limited the "use, sale, or lease" language of section 363 and hence turnover under section 542. *See e.g. Parker GMC Truck Sales, Inc. v. United States*, 12 B.R. 667, 6 Bankr.Ct.Dec. (CRR) 899, 80–2 U.S. Tax Cas. (CCH) ¶ 9778 (Bkrtcy.S.D.Ind. 1980); *Accord, In re Paukner*, 10 B.R. 29, Bankr.L.Rptr. (CCH) ¶ 67,771, 81–1 U.S. Tax Cas. (CCH) ¶ 9204 (Bkrtcy.W.D.Tenn. 1980); *In re Bush Gardens*, 10 B.R. 506, 5 Bankr.Ct.Dec. (CRR) 1023, 79–2 U.S. Tax Cas. (CCH) ¶ 9736 (Bkrtcy.D.N.J.1979); *In re Avery Health Center*, 8 B.R. 1016, 7 Bankr.Ct.Dec. (CRR) 210, Bankr.L.Rptr. (CCH) ¶ 67,815, 81–1 U.S. Tax Cas. (CCH) ¶ 9229 (D.C.W.D.N.Y.1981). The leading case, *Parker GMC Truck Sales, Inc. v. United States*, 12 B.R. 667, 6 Bankr.Ct.Dec.

(CRR) 899, 80–2 U.S. Tax Cas. (CCH) ¶ 9778 (Bkrtcy.S.D.Ind.1980), held that the "seized property itself did not become part of the estate, but only the rights of the debtor therein ... become part of the estate. Therefore, the debtor has no right to turnover of the property itself under section 542 of the Bankruptcy Code." *Id.* at 669. This limitation on inclusion of property in the debtor's estate was in part due to the "use, sale, or lease" language of 11 U.S.C. § 363 (Supp.V 1981) and the legislative history surrounding 11 U.S.C. § 541 (Supp.V 1981). The history suggests that debtor's interests in property are not expanded upon filing and that the estate succeeds only to those limited interests possessed by the debtor at the time of the commencement of the case. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 82 (1978). The conclusion was that since the estate would succeed to no greater rights than those held by the debtor, that after property was seized by the Service prior to bankruptcy, the only rights that the estate obtained were those under I.R.C. §§ 6331, 6335 and 6342 (CCH 1981). K. Landey, *United States v. Whiting Pools*, 674 F.2d 144 (2nd Cir.1982) AN ANALYSIS OF A DEBTOR'S RIGHT TO A TURNOVER ORDER AGAINST THE IRS, 57 Am.Bankr. L.J. 141, 147 (1983).

██ In affirming the second circuit's decision in *United States v. Whiting Pools*, 674 F.2d 144 (2nd Cir.1982), the United States Supreme Court in *United States v. Whiting Pools*, —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), said that sec-

---

10. In *United States v. Whiting Pools*, —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Court found that the Service was an "entity" within the meaning of § 542 and thus was bound by that section "to the same extent as any other secured creditor." *Id.* 103 S.Ct. at 2315. Section 542 differs from section 543 in that section 543 refers to turnover by a custodian. Section 543 is not subject to the "use, sale, or lease" limitations of 11 U.S.C. § 363 (Supp.V 1981) nor the adequate protection requirements of § 363(e), since a custodian, as defined in 11 U.S.C. § 101(10) (Supp.V 1981), presumably has no interest in the property being held for the debtor. *See e.g.* D. Nowak, *supra*, at 338.

11. Sections 363 and 1108 allow a trustee in a Chapter 11 proceeding to use, sell, or lease in the ordinary course of business unless the court orders otherwise, or unless the collateral is cash collateral, in which case either a court order or the consent of the entity with an interest in the collateral is needed. This use, sale, or lease of property may not be inconsistent with any relief granted under section 362. 11 U.S.C. § 363(d) (Supp.V 1981). Section 363(e) also limits the trustee's powers unless adequate protection is provided. For further discussion of adequate protection, *see* n. 12, *infra*.

tion 541, 542, and 363 could "be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, (but) we view them as a definition of what is included in the estate, rather than as a limitation." *Id.* 103 S.Ct. at 2312. The Court reasoned:

In a proceeding under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future. Until the business can be reorganized pursuant to a plan under 11 U.S.C. §§ 1121–1129 (1976 ed. Supp.V), the trustee or debtor-in-possession is authorized to manage the property of the estate and to continue the operation of the business. See § 1108. By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H.R.Rep. No. 95–595, p. 220 (1977). . . . The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate. See 6 J. Moore & King, Collier on Bankruptcy ¶ 3.05, p. 431 (14 ed. 1978). . . .

Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate. *Id.* 103 S.Ct. at pp. 2313–14.

The effect of such language, in this case, would be to include the entire account in which the debtor has some interest in the reorganization estate, provided that the Service is afforded adequate protection.[12] In this case, due to I.R.C. § 6502 (CCH 1981), the Notice of Levy did not serve to complete the levy procedures. If the Notice of Levy did not transfer all ownership rights to the Service, the account should be included as property of the estate under section 541, and property that a trustee may "use, sell, or lease" under section 363, and therefore should be subject to turnover under section 542.

## III. *The Service's Position*

█ The Service contends that its Notice of Levy pursuant to I.R.C. § 6331(a) and (b) (CCH 1981) was sufficient to put the Service in 'constructive possession' of Dunne Trucking Co.'s checking account. It cites *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), *United States v. Pittman,* 449 F.2d 623 (7th Cir. 1971); and *United States v. Eiland,* 223 F.2d 118 (4th Cir.1955), in support of its position. The Service further asserts that this constructive possession was tantamount to a seizure and appropriation of the debtor's ownership rights in the account, *United States v. Pittman,* 449 F.2d 623 (7th Cir. 1971), *United States v. Sullivan,* 333 F.2d 100 (3rd Cir.1964), and that it therefore should not have to turn over the account to the trustee under 11 U.S.C. § 542 (Supp.V 1981).

The cases cited by the Service in support of its position are either distinguishable or do not mandate the result that the Service contends is required in this case. *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), involved a Notice of Levy served upon an assignee for the benefit of creditors prior to the filing of a Chapter VII proceeding under the old Bankruptcy Act. The Court held in *Phelps,* that a Notice of Levy served upon the assignee created "a custodial relationship be-

---

12. *See* D. Nowak, *supra,* at 335–6, where it was said: "The inclusion of section 363 in section 542 assures that a turnover order may not issue in total disregard of the creditor's interest. Rather, sections 542 and 363 should be read together to form the general rule: 'if there is any value or benefit to the estate in receiving property, turnover must be made if the interest of the creditor in the property to be turned over is adequately protected." (Citing 4 COLLIER ON BANKRUPTCY ¶ 542.02 (15 ed. 1980)). In short adequate protection is the sole condition for turnover." (Citing *Fairway Records, Inc. v. Direct Response Productions,* 6 B.R. 162, 6 Bankr.Ct.Dec. 1079, 1080 (Bkrtcy.E.D.N.Y.B.J. 1980). Accord, *Cross Electric Co. v. United States,* 7 B.R. 26, 6 Bankr.Ct.Dec. 1348, 1351 (Bkrtcy.W.D.Va.1980); *Troy Industrial Catering Serv. v. Mich. Dept. of Treasury,* 2 B.R. 521, 1 Collier Bankr.Cas.2d 321, 327 (Bkrtcy.E.D. Mich.B.J.1980)).

tween the assignee and United States and thereby reduced the $38,000 to the United States' constructive possession", thus ousting the Court of jurisdiction over the property. *Id.* at 335, 95 S.Ct. at 1732. It was not the Notice of. Levy which caused the debtor's right and title to be displaced, however, rather debtor's "initial conveyance of the property to the assignee was said to have extinguished the debtor's claim. . . ." *United States v. Whiting Pools,* 103 S.Ct. at 2316, n. 18. The effect of the levy under the old bankruptcy turnover provisions was to cause the assignee to become the agent of the Service with respect to the property that the assignee had in its possession. *Phelps v. United States,* 421 U.S. at 334–35, 95 S.Ct. at 1731; *see also* 2 COLLIER ON BANKRUPTCY, ¶ 23.06 at 506.2–506.3 (14 ed. 1975). To the extent that *Phelps* relied on the summary-plenary jurisdiction it is no longer applicable under the new Bankruptcy Code. *United States v. Whiting Pools,* 103 S.Ct. at 2316, n. 18. Phelps may be distinguished from this case not only because it involved a proceeding under Chapter VII, rather than a Chapter 11 reorganization, but also because the debtor in this case did not assign his rights in the account to a third party.

*United States v. Pittman,* 449 F.2d 623 (7th Cir.1971) involved a service of Notice of Levy on debtor's nominee who held debtor's legal title to certain real estate. The nominee quitclaimed the realty to the Service's Agent who managed, maintained insurance, collected rents on, and otherwise exercised all apparent incidents of ownership over the property. Although the Court held that I.R.C. § 6331(a) levy constituted a "seizure of the property levied upon, tantamount to a transfer of ownership," [13] the Court did not go so far as to say that ownership was actually transferred, rather it found that it would be inequitable to find that the taxpayer did not receive any credit

for the time that the Service held the property. *Pittman,* like *Phelps* differs substantially from the facts of this case, and can be distinguished on that basis. It also was not a bankruptcy case and the policy reasons for finding that property should belong to the estate were not present.

*United States v. Eiland,* 223 F.2d 118 (4th Cir.1955) involved a pre-petition levy upon an indebtedness owing to the debtor by a third party. After the adjudication of bankruptcy, the third party paid the money to the trustee in bankruptcy pursuant to an order of the referee. The United States claimed a lien on the property for the amount of taxes due. Although the Court did find that "service of such notice results in what is virtually a transfer to the government of the indebtedness," *Id,* at 122, that statement was not intended to mean that ownership rights passed by the levy. Instead, notice of levy was found to have the effect of perfecting the Service's rights in the property.[14] *Id.* at 123. The finding in *Eiland* that the property was not subject to turnover, to the extent that it was based on the summary-plenary jurisdiction difference, like the holding in *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), has been effectively overruled by the change in jurisdiction under the present Bankruptcy Code, abolishing the summary-plenary jurisdiction concept.

In *United States v. Sullivan,* 333 F.2d 100 (3rd Cir.1964), although the Court did find that the Service's levy on the delinquent taxpayer's life insurance policies did transfer substantial rights to the Service, it did not find a complete transfer of rights had taken place. *Id.* at 116–17. The Court said that the existence of the right of redemption of property under I.R.C. § 6337, "strongly tends to indicate that the remedy of levy and distraint was not meant to be

---

**13.** Id. at 626.

**14.** *cf.* Ia.Code Ann. § 554.9305 (1983) (a security in advices of credit, goods, instruments, money . . . may be perfected by the secured party's taking possession of the collateral.) It appears that the *Eiland* Court found the Ser-

vice's rights under the Internal Revenue Code to be similar if not the same as those of a secured creditor under Article 9 of the Uniform Commercial Code. *Cf. United States v. Whiting Pools,* 103 S.Ct. at 2316.

applied against assets in such a manner as to destroy them by that very action. Second, it manifestly makes relevant considerations of fairness to the insured, albeit possibly delinquent, taxpayer." *Id.* at 118.

In summary, to the extent that the cases cited by the Service have any continuing validity, apart from their reliance on the summary-plenary jurisdiction, it appears that they stand for the proposition that either the Service should be treated as any other secured creditor with a lien, or that the remedies provided under I.R.C. § 6331 (CCH 1981) are analogous to those available to a secured creditor under part five of Article 9 of the Uniform Commercial Code.[15] *But cf. DiFlorio v. United States,* 30 B.R. 815 (D.C.N.D.N.Y.1983). This was the conclusion reached by the Supreme Court in the recent case of *United States v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In *Whiting Pools,* the Court was confronted with the question of whether there had been a transfer of ownership to the Service, where the Service had seized the debtor's property just prior to the debtor's filing of a Chapter 11 petition to satisfy its tax lien. As in this case, the debtor in *Whiting Pools* owed back taxes to the Service, but had not responded to assessments and demands for payment. A tax lien arose and attached to the debtor's property. The Service then seized the debtor's tangible property pursuant to I.R.C. § 6331 (CCH 1981). The United States moved to have the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (Supp.V 1981), declared inapplicable to the Service, or, for relief from the stay. The debtor counterclaimed for a turnover order pursuant to section 542(a). The Court held that "the reorganization estate [in a Chapter 11 proceeding] includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. The Court found *Phelps* inapplicable for two reasons. First, *Phelps* involved a Chap-

ter VII liquidation instead of a reorganization. The Court found that the policy behind reorganization was such that it mitigated against narrowly restricting the range of property to be included in the estate. *Id.* 103 S.Ct. at 2312–13. Second, the Court found that *Phelps* was based on the summary-plenary jurisdiction distinction of the old Bankruptcy Act, and that to this extent *Phelps* had been effectively overruled by the enactment of the new code. *Id.* 103 S.Ct. at 2314, n. 13. The Court went on to discuss the question of whether the Service should be treated differently from other secured lien creditors. The Court said:

> Congress carefully considered the effect of the new Bankruptcy Code on tax collection, see generally S.Rep. No. 95–1106 (1978) (report of Senate Finance Committee), and decided to provide protection to tax collectors, such as the IRS, through grants of enhanced priorities for unsecured tax claims § 507(a)(6), and by the nondischarge of tax liabilities. § 523(a)(1). S.Rep. No. 95–989, pp. 14–15 (1978). Tax collectors also enjoy the generally applicable right under § 363(e) to adequate protection for property subject to their liens. Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien. *Id.* 103 S.Ct. at 2315–316.

The Court found the provisions of §§ 6331 and 6332 to be provisional remedies, analogous to secured creditor's remedies under Article 9 of the Uniform Commercial Code, but not determinative of the Service's rights to the seized property. The Court said that those provisions "merely bring the property into the Service's legal custody." *Id.* 103 S.Ct. at 2316. The Court held that until a tax sale takes place, "the property remains the debtor's and thus is subject to

---

**15.** This latter proposition is borne out by the legislative history surrounding the Federal Tax Lien Act of 1966, Pub.L. No. 89–719 § 1 Title 1, §§ 101–105(a), (c), 106–114. *See* 112 Cong. Rec. 3722 (1966) Senate Finance Committee, S.Rep. No. 1708, U.S.Code Cong. & Admin. News, p. 3722, Oct. 11, 1966 (to accompany H.R. 11256).

the turnover requirement of § 542(a)." *Id.* 103 S.Ct. at 2317.[16] The Court noted that the Internal Revenue Code itself referred to the debtor as the owner of property until a sale was completed. *Id.* 103 S.Ct. at 2316.

## IV. *Costs*

■ In addition to the request for turnover, the debtor has requested that the Court award costs of this action and any further relief that the Court finds appropriate in this action. Debtor has not cited, nor have we discovered, any authority for granting such relief. Debtor further has not provided the Court with any itemization of costs or expenses incurred in this proceeding. We therefore find that Debtor is not entitled to such relief in this action.

## V. *Conclusion*

■ Although this case does not involve property which can be sold, as in the *Whiting Pools* decision, the Court finds that the rationale of that case requires a finding that ownership did not pass to the Service by its Notice of Levy. The cases cited by the Service, to the extent not superseded by the enactment of the new Bankruptcy Code, do not support the conclusion that ownership was transferred by such notice, especially where the debtor has done nothing to voluntarily give up his rights in the collateral. Furthermore, since notice of seizure was not given to the debtor in this case, it can not be safely said that debtor's rights to the property were extinguished prior to the filing of the bankruptcy petition. To say that they were, would extinguish debtor's and other creditor's rights in the property without any required notice at all. Finally we concur with the Court in *In re Alpa Corporation,* 11 B.R. 281, 7 Bankr.Ct.Dec. (CRR) 791 (Bkrtcy.D.Utah 1981) where it was said:

> To say that a debtor is not entitled to a § 542 turnover because the debtor is not entitled to possession absent bankruptcy

is to read § 542 out of the law. The bankruptcy court is, instead, charged with balancing the respective interests in the property against the bankruptcy standards of adequate protection and other cause. The fact that the creditor may have a 'significantly greater interest' in the property than the debtor provides no bar to the right of debtor-in-possession to compel a turnover. Rather, the extent of the creditor's interest in the property is relevant only in the context of determining adequate protection or entitlement to relief from the stay, if requested. Id. at 289–90, 7 Bankr.Ct.Dec. (CRR) at 796. *See also* K. Landey, *supra,* at 141–153.

■ The Service has a lien against Dunne Trucking Co.'s checking account which is at least as great as the value of the account. This lien gives the Service the status of an entity with an interest under section 363 such that adequate protection of that interest can be required. 11 U.S.C. § 363(e) (Supp.V 1981). Debtor asserts that the account is necessary in order for it to be able to effectively reorganize, however. If the account would be of value to the estate by providing ready cash to effect the debtor's reorganization, the debtor should be permitted to show that it can provide the Service with protection of its interest. *See id.* § 361.

In conclusion, we find:

1. that as of the date of the filing of the petition the Service did not have actual possession of the account;

2. that absent a Notice of Seizure prior to debtor's filing of the bankruptcy petition, that the Notice of Levy did not complete the levy on the account;

3. that the Notice of Levy by itself did not extinguish the debtor's rights in the checking account and therefore did not amount to a transfer of ownership rights in the account to the Service;

---

**16.** The Court cited *Bennett v. Hunter,* 9 Wall (76 U.S.) 326, 336, 19 L.Ed. 672 (1870). In the *Bennett* opinion, the Court found that some further act was necessary, beyond the seizure of property, to divest an owner of title to property. The Court noted that in any case, not even redemption could be made until sale had

taken place so that it seem "unreasonable to give to the act [seizure], considered as a revenue measure, a construction which would defeat the rights of the owner to pay the amount assessed and relieve his lands from the lien." *Id.* at 335.

4. that despite the Service's actual possession of the account subsequent to the filing of the bankruptcy petition, the account was property of the estate within the meaning of section 541 of the Bankruptcy Code;

5. that the account is property that the trustee may use, sell, or lease within the meaning of section 363 of the Bankruptcy Code;

6. that the account is therefore subject to the turnover provisions of section 542 of the Bankruptcy Code;

7. that a hearing will be held to determine whether the Service can be provided with adequate protection of its interest in the account;

8. that pending such hearing, the Service will hold the funds from the account subject to Order of this Court;

9. Debtor is not entitled to costs or other relief in this action for turnover of the account to the estate.