In re Owen J. HEBERMEHL, Debtor.

Owen J. HEBERMEHL, Plaintiff,

v.

UNITED STATES of America Through its Agents the INTERNAL REVENUE SERVICE and Metro Toyota, Inc., and Jeffery Beattie, Trustee, Defendants.

Bankruptcy No. 90–16115 DEC.

Adv. No. 90–1456 CEM.

United States Bankruptcy Court, D. Colorado.

July 17, 1991.

---

Jeffery L. Beattie, trustee, pro se.

Andrew L. Cameron, Denver, Colo., for debtor/plaintiff.

Karen Lynne Baker, Washington, D.C., Donald R. Wrobetz, Denver, Colo., for defendant, U.S., I.R.S.

## OPINION AND ORDER

CHARLES E. MATHESON, Chief Judge.

On April 26, 1991, this Court heard the trial on the Complaint for Order Requiring Turnover of Wrongfully Withheld Wages and for Sanctions Including Attorney Fees ("Complaint") filed by Owen J. Hebermehl, Debtor ("Plaintiff" or "Debtor"). Debtor named Metro Toyota, Inc., the Debtor's employer ("Metro" or "Employer"), Jeffery Beattie, Interim Trustee ("Trustee"), and the United States of America, particularly the Internal Revenue Service ("IRS") as defendants. The dispute arises over funds owed to the Debtor by Metro for Wages which are now in the registry of the Court but were originally held by Metro. The IRS asserts an interest in these funds pursuant to a notice of levy allegedly served on Debtor and Metro prior to the filing of the petition in bankruptcy.

The Debtor also filed a Motion for Contempt which this Court effectively denied because it is the view of this Court that a violation of section 362 is not punishable by contempt. The Debtor also filed a Motion for Forthwith Hearing and Motion for Immediate Turnover and the Court held a preliminary hearing on December 6, 1990. At that hearing, the Court noted that the Trustee had not been named or served and the Court ordered the Debtor to properly join the Trustee to determine his interest in the funds in dispute. The Court also ordered, at that time, that the funds currently held by Metro be deposited into the registry of the Court.

Thereafter, the Debtor joined and served the Trustee and this Court issued an order setting the matter for trial. At the close of evidence and arguments, the Court took the matter under advisement in order to review the case law cited by the Debtor in support of his proposition that the IRS did not have a validly perfected lien against

the funds deposited into the registry of the Court.

## A.  FACTS

The essential facts in this case are undisputed.  During September, 1990, Debtor was employed by Metro as a salesman.  Preceding, and up until that time, the Debtor owed the IRS 1040 Income Taxes for the years 1981 through 1986.  The significant dates are as follows:

1.  On August 5, 1985 and September 9, 1985, the IRS had assessed taxes in the amount of $14,135.28 and $18,587.06 for the years 1981 and 1982, respectively.

2.  On March 20, 1986, the IRS recorded a tax lien against the Debtor with the Clerk and Recorder of Arapahoe County for taxes due in 1981 and 1982.

3.  On October 2, 1989, the IRS assessed the income taxes due for 1983, 1984 and 1986 in an amount in excess of $50,000.

4.  On January 11, 1990, the IRS recorded a second tax lien in Jefferson County incorporating the 1983, 1984 and 1986 taxes with those due for 1981 and 1982.

5.  On April 15, 1990, Debtor filed his 1040 Income Tax Return for the year 1989.

6.  On May 28, 1990, the IRS made an assessment in the amount of $9,783 against the Debtor for his 1989 taxes.

7.  On September 17, 1990, the IRS recorded a third tax lien in Jefferson County incorporating the prior taxes due with those due for 1989.

8.  On September 19, 1990, the IRS issued a notice of levy to Metro.

9.  On November 19, 1991, the IRS released its levy against $7,312.00 (Exhibit G).

No tax lien was ever filed in Adams County, the county of the Debtor's residence during the times mentioned above and the notice of levy is nowhere to be found.  The IRS cannot find it in their records, Metro does not have a copy in their records and the Debtor denies receiving one.  The IRS through Carol Gaudet testified that the Debtor, shortly after the notice of levy was issued, contacted the IRS in early October 1990 to arrange the release of the levy.  In addition no notice of seizure pursuant to 26 U.S.C. § 6335 was given.

On October 15, 1990, the Debtor filed his Chapter 7 petition in bankruptcy.  The following day, October 16, 1990, the Debtor was due to be paid for the month of September.  Due to the existence of the notice of levy, however, Metro did not disburse the funds.  The IRS officer, Carol Gaudet, testified that she had instructed Metro not to do anything with the funds until the IRS had gotten back to Metro.  This conversation occurred post-petition.  Ms. Gaudet also testified that at no time post-petition did she inform Metro that it could release the funds to the Debtor.

In December, 1990, Metro deposited $7,578.07 into the registry of the Court.  That amount is the aggregate of wages due prepetition for the month of September and month of October up to October 15, 1990, minus the draws owed back to Metro for the month of September and withholding taxes.  There was also testimony that child support was withheld.

## B.  ISSUES

The issues presented by the foregoing facts is whether the amounts held are property of the estate and, if so, who is entitled to those funds.  The related question is what steps must the IRS take to perfect its interest in wages and whether, under the facts of this case, the failure of the IRS to serve a notice of seizure pursuant to 26 U.S.C. 6335 is a fatal deficiency.

## C.  ANALYSIS

■ Based on the evidence presented and the record before the Court, it is clear that the funds held in the registry of the Court are property of the estate.  The Debtor makes an effort to assert that because the wages were not due until post-petition, they are not property of the estate.  The Debtor's argument is without merit.  The language of section 541 is unambiguous.  Section 541(a)(6) of the Bankruptcy Code provides that property of the estate includes "proceeds, product, off-

spring, rents, and or profits of or from property of the estate, *except such as are earnings from services performed by an individual debtor after the commencement of the case."*

The evidence is uncontroverted. The earnings held were for services performed by the Debtor for the month of September and part of October prior to the commencement of the case. Metro paid its employees retrospectively. The salesmen took draws against their commissions and approximately two weeks after month-end, the salesmen were paid. In this instance the Debtor had earned commissions for services performed during the month of September and part of October and Metro's paydate for that month was October 16.

Notwithstanding the fact that these funds are property of the estate, pursuant to 11 U.S.C. § 522 and the Colorado exemption statutes, the Debtor is entitled to claim an exemption for his wages. In this instance the Debtor claimed an exemption of 75% of the wages due. The parties agreed that the Trustee is entitled to the other 25%. The dispute then is between the Debtor and the IRS as to entitlement to the remaining 75%.

■ The IRS asserts a right to the exempt funds pursuant to both its notice of levy and pursuant to 11 U.S.C. § 522(c).[1] The IRS asserts that section 522(c) is tantamount to a priority right to property exempted. This Court disagrees. Section 522(c) does not give the IRS a right to or claim against specific property. It simply preserves the right of the IRS to collect nondischargeable taxes or a tax debt secured by a tax lien from property so exempted. With respect to each subsection of section 522(c) and the facts of this case, it has been admitted that the IRS did not properly file a tax lien. The IRS did not file its tax liens in the county where the Debtor resided. Thus, section 522(c)(2)(B)

is unavailable as an avenue of collection for the IRS. In the alternative, section 522(c)(1) is available to the IRS in that the taxes which it seeks to collect are nondischargeable pursuant to section 523(a)(1) as a tax owing under section 507(a)(7). The Debtor admits as much in his response to the Motion for Summary Judgment. Whether that is enough for the IRS to lay claim to these particular funds is the question.

The analysis necessarily turns then to the question of sufficiency of the notice of levy to perfect the IRS's claim against the wages. The Debtor argues that the deficiencies in filing the tax liens taint the notice of levy. Debtor also asserts that the IRS failed to file a notice of seizure pursuant to 26 U.S.C. § 6335 and that, therefore, the notice of levy is ineffective.

■ Throughout the pleadings and the hearing, the Debtor contended that because the IRS could not produce a copy of the notice of levy, on that basis alone, the IRS had no interest in the funds. At the close of the hearing, however, this Court ruled that the evidence established that a notice of levy had existed. Two agents from the IRS, both the agent who caused the notice of levy to be issued and the agent who actually issued it testified regarding its issuance. The evidence is abundantly clear that Metro, pursuant to this notice of levy, held funds due and owing to the Debtor. Moreover, there is indication that the Debtor set up a meeting with the IRS to arrange release of the levy following the service of the notice of levy on him. See also, Exhibit G, pg. 2. Thus, the Debtor cannot, in good conscience, argue that the IRS's inability to produce the document at the hearing in some way undermines its existence.

With respect to the argument that a notice of seizure is required in order to per-

---

1. Section 522(c) reads: Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title; or
(2) a debt secured by a lien that is . . .
  (B) a tax lien, notice of which is properly filed.

fect the interest of the IRS in the wages so withheld, some further discussion is required. At the time of the hearing, the Debtor, relying upon the authority of *In re Dunne Trucking Company*, 32 B.R. 182 (Bankr.N.D.Ia.1983), argued that in order for the IRS to perfect its rights to the funds it must not only serve a notice of levy but also serve a notice of seizure. The law in this area is less than clear.

The pertinent provisions of the Internal Revenue Code ("IRC") are 26 U.S.C. §§ 6331 and 6335. Section 6331(a) states:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person *or* on which there is a lien provided in this chapter for the payment of such tax. (Emphasis added.)

Section 6331(b) states:

> The term "levy" as used in this title includes the power of distraint and seizure by any means.

Section 6331(d), dealing specifically with wages, provides:

> A levy may be made under subsection (a) upon the salary or wages ... of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy.
>
> Such notice shall be given in person, left at the dwelling or usual place of business of such person, or sent by mail to such person's last know address, no less than 10 days before the day of levy.

■ As to the Debtor's first argument, that the Notice of Levy is tainted because the tax lien was not filed properly, the provisions of the IRC cited above indicate that a levy stands on its own. There is no requirement that a tax lien be properly filed.

■ As to the Debtor's alternate argument, section 6335 is captioned "Sale of Seized Property." Section 6335 requires that notice of seizure be given to the owner of the property as soon as practical after seizure of the property. It also requires that notice be given to the owner of the manner and conditions of sale of that property. These two sections, 6331 and 6335, up to this point, seem relatively clear. In the instance of cash, where there is not going to be a sale, one would conjecture that no notice of seizure is necessary. The confusion arises, however, with another section, 26 U.S.C. § 6502(b). That section states that "[t]he date on which a levy on property or right to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given."

The question of the import of the notice of seizure has arisen in the context of whether property is property of the estate on the date of the filing of the petition where a notice of levy has issued prepetition. If, in the case of tangible personal property, all that the IRS has done is seize property, it is clear that title does not transfer. The IRS must foreclose. In the case of cash, however, it is possession which transfers title. No foreclosure proceeding or other sale is necessary. It is worth noting that the Debtor takes the position that failure to file a notice of seizure is a defect which goes to the perfection of the IRS's lien on the property. That is quite different from cases which address when and whether title transfers for purposes of determining whether property is property of the estate.

The *Dunne Trucking* case, a case in which the issue of whether cash or cash equivalent was property of the estate, contains fairly broad language regarding the notice of seizure. The court stated:

> Although a sale is not possible when the property is cash or a cash equivalent, ... notice of seizure still appears to be a limitation on the Service's levy authority under § 6331(a). This is because a levy is not considered complete unless a notice of seizure is sent to the owner or holder of rights to the property levied upon. I.R.C. § 6502(b).... Notice of seizure appears then to be not only a condition precedent to an effective sale, but also to the completion of the levy proceedings. 32 B.R. at 188.

Having made that determination, the court in *Dunne* found that:

Although this case does not involve property which can be sold, as in the *Whiting Pools* decision, the Court finds that the rationale of that case requires a finding that *ownership* did not pass to the Service by its Notice of Levy. 32 B.R. at 193. (Emphasis added.)

Despite the rhetoric in *Dunne Trucking,* the case on which the Debtor relies, it does not speak to the nature of the levy and its status as a lien. It speaks to transfer of ownership. Other courts have confronted the same question but have not focused on the notice of seizure. *See e.g., AIC Industries, Inc.,* 83 B.R. 774 (Bankr.D.Colo.1988).

■ Regardless of the position which courts have taken with respect to the notice of seizure and when transfer of title occurs, there does not seem to be a question that the IRS levy upon cash or cash equivalent is tantamount to a lien interest of the IRS in that property. *See United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re AIC Industries, Inc., supra.*

The U.S. Supreme Court in *Whiting Pools* held that the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. *Id.* at 2315. The Court then observed

[w]e see no reason why a different result should obtain when the IRS is the creditor. The Service is bound by section 542(a) to the same extent as any other secured creditor.... Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien. *Id.* at 2315–2316.

The Supreme Court quickly added the caveat, "of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." *Id.* Notwithstanding that statement, the Court goes on to note that:

The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens, ... and are analogous to the remedies available to private secured creditors ... These are provisional remedies that do not determine the Service's right to the seized property, but merely bring the property into the Service's legal custody ... At no point does the Service's interest in the property exceed the value of the lien. *Id.* at 2316 to 2317.

Subsequent cases involving cash or cash equivalent have attempted to distinguish *Whiting Pools* on the basis that the property involved was tangible personal property. *In the Matter of Kirk,* 100 B.R. 85 (Bankr. M.D.Fla.1989); *In re Professional Technical Services, Inc.,* 71 B.R. 946 (Bankr. E.D.Mo.1987); *In re Dunne Trucking,* 32 B.R. 182, 193. The IRS has argued this position consistently and a number of courts rejected it. *In re Health America of Florida, Inc.,* 22 B.R. 268 (Bankr. M.D.Fla.1982); *AIC Industries, Inc., supra.*

### D. CONCLUSION

In light of the foregoing, this Court concludes that the issuance and service of the notice of levy are tantamount to a lien in favor of the IRS against the exempt wages. Because this is only a dispute between the Debtor and the IRS and there are no third parties who assert an interest in these wages, the Court need not decide whether that notice of levy transfers an interest and whether a notice of seizure is a condition precedent to that transfer. The fact of the matter is the IRS does not have the funds in its possession. It merely has a lien against the exempt funds for which some courts require the reorganized debtor to provide adequate protection. *See In re AIC Industries, supra.*

The posture of this case, however, is different. The IRS has a lien against exempt property of the Chapter 7 Debtor. The Trustee asserts no interest in these funds. It is the effect of 11 U.S.C. § 522(c) which is in question. In light of the fore-

going, this Court can reach no other conclusion than that the funds must be turned over to the IRS.

■ With respect to Debtor's contention that the IRS violated 11 U.S.C. § 362, this Court finds that, in fact, the IRS did take actions in violation of the automatic stay. The testimony of Ms. Gaudet was clear that she had phone contact with Metro and told them not to release the funds until she had consulted with their legal counsel. Not until November 19, 1990, did the IRS release the Notice of Levy. As a result Metro held the funds, which at the time this action was initiated included both pre- and post-petition wages, and the Debtor did not have the funds available to him for his use. The only damages asserted by the Debtor are the expenditure of attorneys' fees in the amount of $3,015.00 for pursuing this action.

The Debtor was required to initiate this action to obtain the release of those funds and, therefore, some compensation is appropriate. The Debtor achieved results early on, however, when the IRS released the Levy and when Metro answered and moved to interplead the funds into the registry of the Court. The evidence at the time of the preliminary hearing in December was that the Debtor had received his post-petition earnings. Thus, Debtor is entitled to attorney fees for the 3.6 hours spent in advance of the December 6, 1990 hearing for bringing this action. Based on the affidavit of attorneys fees presented Debtor is entitled to be compensated for 2.5 hours of time at $50.00 per hour and 1.1 hours of time at $150.00 per hour for a total of $315.00, time spent in preparing the Complaint and related motions. As to the time spent thereafter, and in light of this Court's conclusion that the IRS has a lien interest in the prepetition wages so held, the Debtor would have been required to expend these fees to determine their relative interests in the funds interpled.

Accordingly, this Court awards compensatory damages in favor of the Debtor and against the IRS in the amount of $315.00. It is

ORDERED, that the Motion of the Debtor for Immediate Turnover of the funds is DENIED; and it is

FURTHER ORDERED, that pursuant to the Stipulation of the parties the Clerk of the Court shall release $1,902.06 to the Chapter 7 Trustee, Jeffery Beattie, and release the remainder to the IRS; and it is

FURTHER ORDERED, that the Debtor shall have judgment against the IRS in the amount of $315.00.