In the Matter of Robert and Mary KIRK, Debtors.

Robert and Mary KIRK, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 86–1720–8B3.
Adv. No. 86–0390.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

April 27, 1989.

Larry M. Foyle, Tampa, Fla., for plaintiffs.

Chris Larimore, Bradenton, Fla., trustee.

Marika Lancaster, U.S. Dept. of Justice, Washington, D.C., for U.S.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon a complaint filed by the Debtors for turnover of property pursuant to Sections 542 and 543 and to avoid a post-petition transfer pursuant to Section 549 of the Bankruptcy Code. The Court reviewed the record, heard testimony and arguments of counsel, and makes the following findings of fact and conclusions of law.

Robert Kirk (Debtor) was employed as an airline captain for Eastern Airlines for a period of thirty years. Upon retirement the Debtor became eligible for retirement disability benefits which he received from several sources including Prudential Life Insurance Company and State Street Bank. The Prudential policy entitled the Debtor to a fixed, monthly inter vivos benefit payment of $3,336.12. A death benefit provision was also included in the policy but was payable only if the total inter vivos payments to the Debtor did not exceed $25,000.00. The State Street Bank policy entitled the Debtor to a variable monthly benefit which amounted to approximately $1,275.00 per month at the time of the hearing.

As a result of an audit examination of the Debtors' income tax return for the 1982 tax year, the IRS on August 29, 1983 assessed the Debtor $25,307.58 as indicated below:

**TAX ASSESSMENT**

| TAX YEAR | DATE OF ASSESS-MENT | TAX | INTEREST |
|---|---|---|---|
| 1982 | 8–29–83 | 24,039.05 | 1,267.63 |

A demand and notice were given to the Debtors but the Debtors failed to respond. A tax delinquent account was subsequently established in accordance with IRS policy. The IRS then set out to collect the tax by levying against the property of the Debtor. The record does not establish when the notice of levy was sent to Prudential. Not-

withstanding, around October, 1984 and continuing through 1985 without interruption, the IRS began collecting the payments from Prudential in the amount of $3,336.12 per month.

On September 30, 1985 the Debtors were once again assessed. This time the assessment related to the 1981 tax year and amounted to $38,116.30 as indicated below:

**TAX ASSESSMENT**

| TAX YEAR | DATE OF ASSESS- MENT | TAX | INTEREST |
|---|---|---|---|
| 1981 | 9–30–85 | $23,820.00 | $14,296.30 |

On January 19, 1986, the IRS submitted a "Notice of Levy" to Prudential. According to the testimony of Revenue Agent Starr, this "Notice of Levy" was in essence an updated levy which reflected the 1981 tax assessment not previously included as a part of any other levy. Prudential responded by sending a payment in the amount of $13,344.48 representing the months of February, March, April and May, 1986. The payment was received by the IRS on May 19, 1986 and credited to the Debtor's account on May 22, 1986. Prudential remitted two additional payments which the IRS received on May 28th and May 30th.

Several weeks earlier however, on April 30th, 1986, the Debtors filed a Chapter 13 Petition in the U.S. Bankruptcy Court, listing the Internal Revenue as the only creditor. Upon notification of the bankruptcy filing, the IRS returned the last two payments received on May 28th and 30th from Prudential but retained the $13,336.12 payment it received on May 19th. The IRS contends the return of the two payments in no way prejudices its right to these funds.

A complaint for turnover was filed by the Debtors on August 14, 1986 against Prudential Insurance Company, State Street Bank and the Department of Treasury of the United States (IRS). Count I and Count II of the complaint against Prudential Life Insurance Company and State Street Bank, respectively, were dismissed. It is Count III of the complaint seeking turnover pursuant to Sections 542 and 543, and to avoid an improper postpetition transfer pursuant to Section 549 of the Bank-

ruptcy Code which is still at issue. The complaint also alleged the IRS violated the automatic stay provisions of Section 362(a) of the Code. There were no allegations in the complaint nor was evidence presented at the hearing which sought turnover of proceeds received from State Street Bank but the Debtors raised this issue in their post-trial brief.

■ Property of the estate includes all legal or equitable interest of the debtor, wherever located, as of the commencement of the case, with certain exceptions not applicable in the instant case. 11 U.S.C. § 541(a). The definition also reaches after acquired property in a Chapter 13 case. 11 U.S.C. § 1306. The definition is quite broad and encompasses all property, both tangible and intangible which the Debtor may or may not have in his possession at the time the case commences. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Section 542 of the Bankruptcy Code requires anyone other than a custodian in possession of property of the estate on the date the case commenced or during the case, to turnover the property to the trustee or debtor in possession if the trustee or debtor in possession may use, sell, or lease the property under Section 363, or if the debtor may exempt the property under Section 522. Section 543 demands turnover from a custodian who must also account for the property in its possession. Section 542 is applicable in the instant case, *see, Whiting Pool, supra,* 462 U.S. at 208, 103 S.Ct. at 2315, 76 L.Ed.2d at 524. Section 543 is not applicable inasmuch as the IRS does not fall within the definition of custodian as comtemplated by the Bankruptcy Code. 11 U.S.C. § 101(10).

The Debtors contend the retirement disability benefit check from Prudential Life Insurance Company received by the IRS totalling $13,344.00 was in fact property of the estate. The Debtors further contend by virtue of cashing the check, the IRS violated the automatic stay provisions of Section 362(a) inasmuch as the check was negotiated post-petition.

The powerful protection of the automatic stay coupled with a broad definition of property of the estate must nonetheless give way to the rights of any creditor who is not bound by these provisions of the Code. The IRS' rights, if any, to the contract benefit proceeds are statutory and arise upon compliance with the collection provisions of the Internal Revenue Code.

As in the instant case, the tax collection process begins with a tax assessment. The assessment itself is merely the recording of the liability of the taxpayer. 26 U.S.C.A. § 6203 (West 1980). Once the assessment is made, notice of the amount of the liability is given to the taxpayer and a demand is made for the payment. 26 U.S.C.A. § 6303(a) (West 1967). Testimony of Revenue Agent Starr, established that notice was given in this regard. If the taxpayer neglects or refuses to pay after the demand is made, a general lien arises in favor of the United States upon all property and property rights the taxpayer owns at the time of the assessment. 26 U.S.C.A. § 6321 (West 1967). The tax lien must be perfected by recordation of the notice of lien. 26 U.S.C.A. § 6323(f) (West Supp. 1988). Recordation is not at issue in the instant case. The lien remains in effect until the tax obligation is satisfied but generally the lien must be collected by levy or a proceeding in court within 6 years after the date of the assessment. 26 U.S.C.A. § 6502(a) (West 1967). Although Section 6331 grants the Service extraordinary power to seize property to satisfy a tax liability, it does not prescribe how a levy should be made. *In re Dunne Trucking Co.*, 32 B.R. 182, 187 (Bankr.N.D.Iowa 1983). The term "levy" includes "the power of distraint and seizure by any means." 26 U.S.C.A. § 6331(b) (West Supp.1988). While the statute grants the Service the power of distraint and seizure 'by any means,' as a matter of practice, the Service serves a notice of levy to seize property. *Dunne Trucking Co, supra,* at 187. Section 6331(d) of the Internal Revenue Code outlines the notice requirement which must be met as to the taxpayer. 26 U.S.C.A. § 6331(d) (West Supp.1988). Treasury Regulation § 301.6331–1(a)(1) provides a guideline in regards to the notice requirement as to any person in possession of the taxpayer's property or obligated with respect to the property subject to the levy. Treas.Reg. §§ 301.6331–1(a)(1) and (c) (CCH 1985). Strict compliance with the procedure set out in the Internal Revenue Code is necessary in order for the IRS to effect a valid levy and seizure. *In the Matter of Computer Management, Inc.,* 40 B.R. 201, 203 (Bankr.N.D.Ga.1984). In the instant case, the notice requirement as to the obligor was satisfied inasmuch as the evidence established the Notice of Levy was served on Prudential Life Insurance Company on January 19, 1986. The Debtor does not contend, nor was evidence introduced at the hearing, challenging the propriety of the notice requirement as to the Debtors. The Court is therefore left to conclude the IRS satisfactorily met both notice requirements.

Without dispute, by virtue of the prior assessments and pursuant to Section 6321, sometime prior to the January 19th's levy a lien arose against the Debtor's property held by Prudential. But what was the nature of that property upon which the IRS levied? The IRS contends the property levied against was the Debtor's contract rights with Prudential. It is well settled that state law determines the nature of the property interest for the purpose of a general tax lien but the determination of whether the IRS can reach the property is a matter of federal law. *Aquilino v. United States*, 363 U.S. 509, 513–514, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). Here, the Debtors do not contend that their contract right is not a property right under state law. It is equally well settled a taxpayer's rights under a trust or a contract to receive periodic payments is subject to a federal lien for unpaid taxes and the IRS may levy against these payments. *Randall v. H. Nakashima & Co., Ltd.*, 542 F.2d 270 (5th Cir.1976); *Fried v. New York Life Insurance Co.*, 241 F.2d 504 (2nd Cir. 1957). But is one levy sufficient to cover a contract right for payments due in the future?

The Court is guided by Sections 6331(b) and 6331(e) of the Internal Revenue Code as regards the question of the sufficiency of the levy. Section 6331(b) of the Internal Revenue Code provides that a levy "shall extend only to property possessed and obligations existing at the time thereof". An obligation exists when the liability of the obligor is fixed and determinable although the right to receive future payment may be deferred until a later date. Treas.Reg. § 301.6331–1(a)(1) (CCH 1985). Section 6331(e) carves out an exception to Section 6331(b) and states that "the effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until the liability out of which such levy arose is satisfied or becomes unenforceable by reason of lapse of time". 26 U.S.C.A. § 6331(e) (West Supp.1988). The interpretation of this important limitation on the levy process is critical to a determination of the issue before the Court. The Court interprets Section 6331(b) to mean a levy catches into its web only property or property rights then in existence as illustrated by the frequently cited example of a levy on a taxpayer's bank account. The levy on the account will attach to the funds in the account at the time of the levy. However, if additional funds are placed in the account subsequent to the levy, the IRS must again issue a Notice of Levy against the account because the additional funds were not in existence at the time the first levy was made. Treas.Reg. § 301.6331–1(a)(1) (CCH 1985). Conversely, on property defined as salaries and wages, Section 6331(e) allows one levy which will have a continuing effect on the earnings of the taxpayer inasmuch as the levy will attach to all future salaries and wages until the tax obligation is satisfied, notwithstanding these future salaries and wages were not in existence at the time of the levy. Treas.Reg. § 301.6331–2(c) (CCH 1985). The Court's interpretation is consistent with a practical application of Sections 6331(b) and (e). But how does the interpretation translate when the property involved is a contract right? The IRS has historically recognized contract rights as a right upon which one levy

is sufficient to cover benefits payments deferred until the future. Rev.Rul. 55–210 1955–1 C.B. 544. As such, it is not surprising the IRS contends the issuance of the Notice of Levy on January 19th was the final step in the levy process and the collection of the proceeds was not a substantial element in its completion but merely a ministerial act. In other words, they contend one levy was sufficient and no additional levy was needed as to any payment by Prudential Insurance Company as they came due.

Conversely, the Debtors argue the levy was incomplete as of April 30th, the date the bankruptcy petition was filed, inasmuch as the IRS did not have physical possession of the benefit proceeds (payments) for the months of February, March, April and May until May 19th (post-petition). The Debtor does not argue a Notice of Seizure must be served upon the owner or holder of rights in order to complete the levy proceedings, even in the case of cash or cash equivalent, *Dunne Trucking, supra,* at 188; *Rouse v. United States (In re Suppliers, Inc.),* 41 B.R. 520 (Bankr.E.D.Ky.1984) perhaps because numerous cases have rejected this position. *Pawlowske v. Chrysler,* 623 F.Supp. 569, 570 (N.D.Ill.1985). Rather, the Debtor contends a separate levy was required to be made each month the benefit proceeds became due. The Debtor argued the IRS may keep any of the benefit proceeds in its possession as of April 30th but any benefit proceeds collected subsequent to that date belong to the estate. They further contend, the property levied against was akin to salary and wages. In addition, they contend they retain an interest in the property notwithstanding the lien because there can be no divestment of their interest by levy, either legal or equitable without first obtaining possession of the property.

■ The Debtor's argument that the retirement disability benefit is akin to salaries and wages is self defeating in light of Section 6331(e) of the Internal Revenue Code which allows one continuous levy to be made. The Court finds no correlation between the concept of salaries and wages

and the concept of disability retirement benefits except that each may be received on a fixed and periodic basis. The argument advanced by the government that the levy was complete on January 19th is persuasive in light of the fact the contract right was fixed and determinable at that time. The fact periodic payments were made pursuant to the contract rights is not material relative to the levy. As such, only one levy was required to bring the contract right into the constructive possession of the United States. (See, *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), holding a levy reduced the funds to the United States constructive possession). No separate levy was needed as to each periodic payment under the contract with Prudential. The Court points out an opposite conclusion would have been reached had the Court ruled the property levied against was the periodic payments. If the nature of the property levied against were the periodic payments as the Debtor contends, based upon the Court's interpretation of Section 6331(b) of the Internal Revenue Code, a notice of levy would have been required as each payment fell due.

Having decided the levy was complete on January 19th, there remains one final, reciprocal issue before the Court. Did the notice of levy, issued pre-petition on January 19th, divest the Debtor of his legal and equitable interest in a contract right to receive disability retirement payments from Prudential Life Insurance Company? If so, the Debtor had no legal or equitable interest left in the property to bring into the Chapter 13 estate. Conversely, does the Debtor's contract right remain property of the estate notwithstanding the levy, but in which the IRS might remain an interest sufficient enough to require adequate protection from the Debtor?

As to the first issue, the IRS argues the 1975 United States Supreme Court decision in *Phelps, supra*, 421 U.S. at 337, 95 S.Ct. at 1732, 44 L.Ed.2d at 207 is dispositive of the issue. In *Phelps*, the bankruptcy receiver sought turnover of the proceeds of sale of property in the hands of the debtor's assignee for the benefit of creditors. The Court ruled a notice of levy of a tax

lien coupled with a demand for the payment served on the assignee was an authorized means of collecting the taxes from the taxpayer. The Court also held the levy (1) created a custodial relationship between the assignee and the United States, (2) reduced the funds to the United States constructive possession, (3) was equivalent to a seizure and (4) gave the United States full right to the proceeds. *Phelps, supra*, 421 U.S. at 333–37, 95 S.Ct. at 1731–33, 44 L.Ed.2d at 205–07. Relying on *Phelps*, the IRS in this case argues the issuance of the Notice of Levy on the contract right of the Debtor gave the United States full legal right to the property leaving nothing for the Debtor to bring into the estate. They argue the later ruling by the Supreme Court in *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), does not disturb the *Phelps* decision.

In *Whiting Pools* the United States Supreme Court was faced with the issue of turnover of tangible personal property of the debtor seized by the IRS to satisfy a tax lien. The Supreme Court broadly interpreted Section 541(a)(1) as defining rather than limiting what is included in the estate. *Whiting Pools, supra*, 462 U.S. at 203, 103 S.Ct. at 2312, 76 L.Ed.2d at 521. The Supreme Court considered the rehabilitation purposes of the Chapter 11 filing and the relative value of the property levied against as compared to the amount of the levy. The Supreme Court held the Debtors' interest in the property levied against pre-petition was not extinguished until the property was sold to a bonafide purchaser at a tax sale and ordered turnover of the property. The decision was based on the rationale that (1) the levy was worth far more in the hands of the debtor undergoing reorganization than its scrap value, (2) the debtor retained property rights in the surplus and redemption rights, and (3) in order for those remaining property rights not to be prejudiced, the property must remain as part of the bankruptcy estate, provided the IRS is given adequate protection. *Altman v. C.I.R.*, 83 B.R. 35, 38 (D.Ha.1988). Some courts have interpreted this decision to stand for the limited proposition that a

debtor's interest in tangible property is not extinguished by a pre-petition governmental levy which is in an amount less than the value of the property seized. *DiFlorio v. United States*, 30 B.R. 815, 818 (N.D.N.Y. 1983). The IRS argues *Phelps* is not disturbed by *Whiting Pools* inasmuch as the debtors' tax liability of approximately $145,000.00 was far in excess of the $13,344.00 seized. As such, there was no equitable interest in the surplus nor a right of redemption inasmuch as the property in question was cash or cash equivalent and nothing had to be sold.

Indeed, recent cases have addressed this issue but have been inconsistent in their decisions. *Altman v. C.I.R., supra,* at 38. When confronted with the issue prior to *Whiting Pools,* the court in *In re Fair Department Store, Inc.* relied on the *Phelps* decision and held a pre-petition levy by the IRS placed the property beyond the reach of the trustee or debtor in possession and was therefore not within the estate. *In re Fair Department Store, Inc.,* 26 B.R. 611, 612 (Bankr.S.D.Ala.1982). The court relied, inter alia, on the Supreme Court's statement in *Phelps* that notice of levy and demand were equivalent to seizure; as such, the pre-petition levy gave the IRS "full legal right" to the money levied upon. *In re Fair Department Store, Inc., supra,* at 613, 614. Two cases which continue to rely on *Phelps* post-*Whiting Pools* distinguish themselves from *Whiting Pools* on the basis that the property involved is cash or cash equivalent or of a value less than the amount of the lien, leaving nothing to bring into the estate. (A pre-petition levy exceeded amount of the seized bank account, thus property was not within the estate. *DiFlorio, supra,* at 818; a pre-petition levy exceeded amount of trust fund, thus trust fund was not property of the estate. *Altman, supra,* at 39).

The Court is fully persuaded *Phelps* does not control in the instant case. While not overruling *Phelps,* in *Whiting Pools* the Supreme Court twice made reference to the *Phelps* decision. The Supreme Court distinguished *Phelps* stating *Phelps* was decided under the old Bankruptcy Act where the distinction between summary and ple-nary jurisdiction was relevant. This distinction appears no longer relevant under the new Bankruptcy Code. Furthermore, *Phelps* was a liquidation situation, and is inapplicable to a reorganization situation unless there is no benefit to the estate. *Whiting Pools, supra,* 462 U.S. at 207 n. 13, 103 S.Ct. at 2314 n. 13, 76 L.Ed.2d at 523 n. 13. The Supreme Court also stated:

> The enforcement provisions of the Internal Revenue Code of 1954, 26 USC §§ 6321–6326 (cites omitted), do grant to the Service powers to enforce its tax liens that are greater than those possessed by private secured creditors under state law. (cites omitted). *But those provisions do not transfer ownership of the property to the IRS.* The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, 26 USC §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its lien, (cite omitted) and are analogous to the remedies available to private secured creditors. (cite omitted). They are procedural remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody. (cites omitted). At no point does the Service's interest in the property exceed the value of the lien. (Emphasis added).

The Supreme Court recognized their statement in *Phelps* to the effect the levy vest the IRS with "full rights" is dictum because *Phelps* was decided on the issue of plenary verses summary jurisdiction. *Whiting Pool, supra,* 462 U.S. at 209 n. 18, 103 S.Ct. at 2316 n. 18, 76 L.Ed.2d at 525 n. 18.

While it is obvious *Whiting Pools* will control in a Chapter 11 case involving tangible property where value exceeds the amount of the lien the question remains whether the decision is applicable to Chapter 7 and Chapter 13 cases. The Court is mindful the Supreme Court did not express an opinion on whether Section 542(a) has the same broad effect in a Chapter 13 or Chapter 7 context. *Whiting Pools, supra,* 462 U.S. at 209 n. 17, 103 S.Ct. at 2315 n.

17, 76 L.Ed.2d at 524 n. 17. Yet the court in *In re Mills*, 37 B.R. 832 (Bankr.E.D. Tenn.1984) expressed the view the principles enunciated by the Supreme Court in *Whiting Pools* are applicable in Chapter 13 and Chapter 7 cases on the rational the provisions of Bankruptcy Code Sections 541–543 apply equally to both proceedings under Chapter 7 and Chapter 11. *In re Mills, supra*, at 834. Indeed, the Supreme Court viewed Section 541(a)(1) as a definition of what is included in the estate, rather than as a limitation. *Whiting Pools, supra*, 462 U.S. at 203, 103 S.Ct. at 2312, 76 L.Ed.2d at 521. The Court noted the congressional goal of encouraging reorganizations, and Congress' choice of methods to protect secured creditors suggests that Congress intended a broad range of property to be included in the estate. *Whiting Pools*, 462 U.S. at 203, 103 S.Ct. at 2312, 76 L.Ed.2d at 521. The scope of Section 541 is not limited to tangible property as might be inferred from *Whiting Pools* but encompasses intangible property and cash or cash equivalent levied upon pre-petition as well. For example, in *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819 (Bankr.N. D.Ohio 1987) the court ordered turnover of cash resulting from a pre-petition levy on the Chapter 11 debtor's bank account, reasoning the cash was essential to the rehabilitation of a Chapter 11 debtor. A similar result was reached in *In the Matter of All-Way Services, Inc.*, 73 B.R. 556 (Bankr.E.D.Wis.1987) and *In re Davis*, 35 B.R. 795, 799 (Bankr.W.D.Wa.1983). In *In re Mills, supra*, at 836, the court found the insurance proceeds from the destruction of a Chapter 7 debtor's home are property of the estate. These courts made no attempt to compare the property value to the amount of the lien.

Having come full circle, the Court is not satisfied the broad interpretation of Section 541 should be the basis for making a determination of the issue before the Court absent further evidence on the issue of the value of the contract right. Indeed the Debtor may have neither right to redeem, nor a surplus after lien or sale, as argued by the IRS, but they may nonetheless have value in the contract which could, in fact, exceed the amount of the lien. The Court also notes the issue of value may also be considered in a redetermination of adequate protection (11 U.S.C. § 363(e) noting that adequate protection was previously awarded in the February 27, 1989 court order. The determination of value is also critical in the context of the Chapter 13 plan juxaposed with the issue of confirmation and feasibility (11 U.S.C. § 1325) as well as the determination of the secured status of the IRS' claim (11 U.S.C. § 506). Inasmuch as the record contains no evidence on which a determination could be made, the Court is unable to reach a decision on the issue of turnover. Accordingly, the Court finds it appropriate to defer its ruling until the issue of contract right's value has been addressed. The Court directs the parties to present evidence on this issue at the final evidentiary hearing scheduled for June 20, 1989.

Inasmuch as the Debtor did not seek turnover of any State Street Bank benefit proceeds, the IRS may retain them.