## In re NATIONAL CENTER FOR the EMPLOYMENT OF THE DISABLED, Debtor.

### Bankruptcy No. 93–30172–C.

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

July 15, 1993.

E.P. Bud Kirk, El Paso, TX, for debtor.

Donald R. Williams, Sp. Asst. U.S. Atty., I.R.S., Austin, TX, for I.R.S.

## DECISION ON MOTION TO USE CASH COLLATERAL

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the motion of debtor to use cash collateral. The Internal Revenue Service appeared in opposition, contending that at least some of the monies in question were no longer even property of the debtor and so could not be used. Upon consideration thereof, it is the ruling of the court that the position of the IRS is not well taken and that the motion should be granted subject to conditions as more fully set out in the order.

The National Center for the Employment of the Disabled is a nonprofit corporation which offers a place of employment for disabled and disadvantaged persons. Despite its laudable work, the organization has fallen far behind on its 940 and 941 tax obligations, and now owes the United States nearly $250,000. Prior to filing, the United States levied on certain accounts receivable of the debtor, sending out notices to various companies for whom the debtor does assembly work.[1] While only a small part of the monies intended to be trapped by the levy were actually sent in to the IRS prior the filing, it is the IRS' position that the levy effectively transferred ownership of *all* the receivables thus trapped to the IRS, so that they were not property of the estate as of the bankruptcy filing but rather property of the IRS. The IRS relies on *In re Roland,* an unreported decision of this court,[2] and other authorities, especially an Act case, *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975).

The debtor counters that this court should retreat from its position in *Roland,* because the case was wrongly decided. The debtor argues that this court should instead follow the recent decision of the Eleventh Circuit in *In re Challenge Air Intern., Inc.,* 952 F.2d 384 (11th Cir.1992), in which that court held that a levy did not transfer ownership of an account to the IRS, and that the trustee in bankruptcy could therefore recover the fund subject to the levy via a turnover action. *Challenge Air* relied on [*United States v.*] *Whiting Pools,* [103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)] concluding that that decision applies with equal force to intangible property.

## BACKGROUND FACTS

The debtor is a nonprofit organization that offers job opportunities to the developmentally disabled. Contracting with a variety of companies, including major toy manufacturers such as Hasbro, the debtor does simple assembly work and packaging at a favorable rate for its vendors, in the process giving gainful employment to many who would otherwise have to rely solely on public assistance.

Laudable as are the goals of the enterprise, it has also experienced some cash flow problems over the years, and the debtor's principal, Irving Handlin, has demonstrated an uncomfortable predilection for covering cash flows by not paying 940 and 941 employment taxes. This pattern has been repeated by Mr. Handlin over a number of years, with the result that the Inter-

1. NCED employees do assembly and packing work for a wide variety of companies, to the mutual benefit of NCED and its customers, the largest of which is Hasbro, the toy manufacturer.

2. The decision is evidently "reported" at CCH Bankr.L.Rep., ¶ 73,193, 1989 WL 200424 (Bankr. W.D.Tex.1989). However, this court never sent the decision into that reporter for publication, nor was it ever sent to any other service for publication. The court has no idea how the decision ended up in CCH's reporter, unless the United States itself either sent it in or made it available for publication, an action which was certainly not authorized by this court. There is considerable doubt whether a decision which this court never authorized for publication can serve as precedent. Certainly parties, even the IRS, are not permitted to create their own precedent, for they will select only those decisions that are favorable to their position. Other judges may or may not realize that the judge whose decision happens to have been reported in the CCH reporter may not have authorized its publication. The fact that it has been published tends, of itself, to satisfy other judges to whom the case is cited that the decision is in fact a legitimate precedent.

nal Revenue Service has lost all patience.[3] No matter the fine public service the enterprise offers, the IRS is no longer interested in cooperating with Mr. Handlin's continued insistence on exacting from the United States what amounts to an involuntary government grant to cover operations. Beginning in late 1992, the IRS began collection activity in earnest, and by the winter of 1993, had sent out notices of levy to many of the companies with whom the debtor does business, to trap receivables due the debtor.

After the notices of levy had been sent (and after many were received), but before most account debtors had actually paid any money to the IRS, the debtor filed bankruptcy. The debtor immediately moved for an order directing account debtors to go ahead and pay the debtor what they owed, notwithstanding the levy. The IRS objected, but was overruled and an order was entered to that effect. The debtor then sought approval to use these funds, recognizing that at least a portion were probably the IRS' cash collateral. Again the IRS objected, raising the usual adequate protection concerns, but adding as well that, in any event, the monies in question were not property of the estate, because the notice of levy, once mailed, eliminated any interest the debtor might otherwise have had in these funds.[4]

At hearing, the court determined that approximately $40,000 of the total funds due the account debtor as of the hearing date were funds trapped by the notice of levy prior to the filing of the petition. The court also heard substantial evidence regarding whether the IRS was adequately protected, including a good deal of testimony regarding the pattern of conduct in which the debtor's principal, Mr. Handlin, had been engaging over the past four or five years.[5] At the conclusion of the hearing, the court entertained argument regarding the property of the estate question urged by the IRS, concluding that that issue had to be resolved as a preliminary matter before the court could reach the merits of the cash collateral dispute. *See In re C.M. Turtur Invest., Inc.*, 93 B.R. 526, 528 (Bankr.S.D.Tex.1988).

This memorandum decision addresses that preliminary question only, and is published for the reasons discussed above. The remaining questions (relating to adequate protection) are relatively unremarkable and were adequately addressed by the court on the record in its oral ruling and deserve no further elaboration here.

## ANALYSIS

■ This court, in *In re Roland*, had ruled that a notice of levy, when made on monies due the debtor which are less than the total amount of the levy, eliminates any residual or reversionary interest the debtor might have in the funds, so that no "interest in property" is left if a bankruptcy is filed after the notice of levy is actually received by the account debtor.[6] The court

---

3. Mr. Handlin has had difficulties both with his personal taxes and with the employment taxes for prior non-profit organizations which he directed. He is so effective as a director of such organizations, however, that the IRS has been reluctant to be too harsh, preferring to find ways to work things out, if possible.

4. The IRS also sought reconsideration of the earlier order that had directed account debtors to pay over what they owed to the debtor, notwithstanding the levy; in this way, the IRS avoided being bound by the final order, and saved the opportunity to appeal both rulings should they be adverse to the IRS.

5. The court, upon the conclusion of the evidence, agreed that Mr. Handlin had indeed been quite irresponsible—so much so, in fact, that the court ordered that he no longer be permitted to handle the estate's money, or to sign checks. The court withheld the ultimate determination of adequate protection on a report from the debtor's accountant regarding the likelihood of the debtor's being able to propose a feasible plan for paying off its debts (a report to be prepared independently of Mr. Handlin, but with his cooperation).

6. The term "account debtor" as used in this decision is intended to be generic, and can extend not only to entities such as Hasbro that owe money to entities such as the debtor here for goods shipped or services performed by the debtor, but also to banks, which "owe" the debtor whatever demand deposits the debtor might keep at that bank, in the form of checking accounts, savings accounts, certificates of deposit, and the like.

there concluded that *Whiting Pools* did not control because that case involved only "goods, not cash." *Roland, supra.* Instead, the court found the case to be controlled by *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975), which in turn premised its ruling on whether there remained any equity of redemption after the levy. *Phelps, supra.*

The Eleventh Circuit, in *Challenge Air,* entertained precisely the same argument from the IRS, but rejected it. The logic of that decision now persuades this court that *Roland* was wrongly decided and should be abandoned.[7] The court first rejected that argument that *Whiting Pools* applies only to goods, not cash, noting that no such distinction is made in *Whiting Pools* itself, and adding that the case that *did* support that position, *Cross Electric Co. v. United States,* 664 F.2d 1218 (4th Cir.1981), was the very circuit decision that furnished the conflict in the circuits which the Supreme Court resolved in *Whiting Pools.* Said the circuit court:

> [T]he direct conflict between *Cross Electric* and [*United States v.*] *Whiting Pools,* 674 F.2d 144 (2d Cir.1982), was the basis for granting certiorari to review *Whiting Pools.* 462 U.S. at 202, 103 S.Ct. at 2312. Had the Supreme Court intended to restrict its holding to situations involving tangible saleable property, it either would have not recognized a conflict between [the two cases] and refused to grant certiorari, or it would have, at the very least, indicated that no conflict existed between the two decisions in view of the different types of property involved.
> The *Whiting Pools* decision authorized turnover of the debtor's property held by the IRS to maximize the estate in order to facilitate the debtor's reorganization, and does not rest on such a distinction in the nature of the seized property as the government contends.

*Challenge Air,* 952 F.2d at 386–87. This court agrees with this analysis, and rejects

any reliance on *Cross Electric,* on grounds that that decision has now been overruled by *Whiting Pools.*

Next, the court disposed of the IRS' constructive possession argument (an argument the IRS also advances here), which was premised on language found in *United States v. National Bank of Commerce,* 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985). The circuit court observed that, in truth, that case "is more persuasive to support the trustee's position that the constructive possession by the IRS does not preclude turnover ..." The court then quoted *National Bank of Commerce:*

> The administrative levy has been aptly described as a 'provisional remedy.' ... In contrast to the lien foreclosure suit, the levy does not determine whether the government's rights to the seized property are superior to those of other claimants; it, however, does protect the government against diversion or loss while such claims are being resolved.

*National Bank of Commerce,* 472 U.S. at 721, 105 S.Ct. at 2924.

■■■ Finally, the court disposed of the IRS' *Phelps* argument, observing that

> *Phelps* was decided under the old Bankruptcy Act, where jurisdiction of the bankruptcy court was dependent on the *possessory* interest of the debtor in property. In addition, because *Phelps* involved a liquidation situation, it is not controlling on the question of use of property in a reorganization proceeding.

*Challenge Air,* 952 F.2d at 387; *see also Whiting Pools,* 462 U.S. at 206 n. 13, 103 S.Ct. at 2314 n. 13. Property of the debtor under the Bankruptcy Code extends to all legal or equitable interests of the debtor in property, without regard to whether the debtor is or is not in possession of the property. 11 U.S.C. § 541; *see Whiting Pools,* 462 U.S. at 206 & n. 11, 103 S.Ct. at 2314 & n. 11; H.REP.No. 595, 95th Cong., 1st Sess. 367 (1977). Obviously, the observation of the Supreme Court in *National*

---

7. The court re-emphasizes its dismay that it should even have to go through this exercise, for had the IRS not sent the *Roland* decision in for unauthorized publication in the first place, it would not now be necessary to now repudiate the decision in another published decision.

*Bank of Commerce* that a levy gives the IRS *constructive* possession confirms that neither actual possession nor ownership yet reside in the IRS merely because the levy has been served on an account debtor. The levy prevents the debtor from having unrestricted access to the funds, but does not divest the debtor of ownership of the funds. Once bankruptcy is filed, the bankruptcy estate succeeds to all of the prepetition debtor's legal and equitable interests in property, even those interests that may be restricted or encumbered. And even such interests are still "property of the estate" under section 541(a), available for turnover. As the Supreme Court noted in *Whiting Pools,*

> § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. [citations omitted] In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.

*Whiting Pools,* 462 U.S. at 206–07, 103 S.Ct. at 2314.[8]

■ Turnover actions are necessary precisely in order to recover property of the debtor which is in the hands of secured creditors as of the filing of the bankruptcy case. K. Klee, *Legislative History of the New Bankruptcy Code,* 54 AM.BANKR.L.J. 275, 279–81 (1980). Such property is not limited just to tangible property (like repossessed cars, for example), and *Whiting Pools* made no such distinction in its analysis of section 542. Indeed, the Court analogized to the Uniform Commercial Code, which also gives secured creditors procedural rights to take possession of collateral on a debtor's default, in order to protect the secured creditor's interests, subject to certain restrictions on the creditors' use of the property, yet such collateral is vulnerable to turnover actions.[9] The Court then commented that "[w]e see no reason why a different result should obtain when the IRS is a creditor." *Whiting Pools,* 462 U.S. at 206–07 n. 14, 209, 103 S.Ct. at 2314 n. 14, 2315.

■ Recognizing full well that Title 26 gives enforcement powers to the IRS that exceed those possessed by private litigants, the Court in *Whiting Pools* nonetheless rejected the Service's contention that constructive possession equaled ownership. *Id.* at 209–10, 103 S.Ct. at 2316. At hearing before this court in the instant case, the Service was unable to cite to any provision of the Internal Revenue Code that actually transferred *ownership* of a given account by virtue of the mere service of the levy on the account debtor. At most, sections 6321–6326 of Title 26 assure that account debtors will face serious liability should they pay over funds subject to levy to anyone other than the IRS. *See* 26 U.S.C. § 6321 *et seq.; see also* Treas.Reg. § 301.6332–1(b). The IRS in such a situation has something far less than full ownership in the account; it has at best a cause of action against the account debtor if it violates the levy.

■ Suppose a taxpayer *pays* the IRS *after* a levy is served but *before* the account debtor pays over the account to the IRS. Would the IRS then be permitted to collect from the account debtor anyway, compelling the taxpayer to apply for a refund, or is the IRS compelled to release its levy upon payment? According to counsel

---

8. A number of courts, beginning with *Whiting Pools,* have also observed that *Phelps,* being an Act case, was decided on the issue of plenary versus summary jurisdiction, a distinction abolished under the Bankruptcy Code. *Whiting Pools,* 462 U.S. at 209 n. 18, 103 S.Ct. at 2316 n. 18; *Matter of Kirk,* 100 B.R. 85, 90 (Bankr. M.D.Fla.1989); *In matter of Flynn's Speedy Printing, Inc.,* 136 B.R. 299, 300 n. 1 (Bankr. M.D.Fla.1992). The definition of property amenable to estate administration in section 541(a)

of the Bankruptcy Code is substantially broader than it was under the Act, in order to, among other things, eliminate the very sorts of disputes and jurisdictional conundrums that led to cases like *Phelps. See* H.R.Doc. 137, 93rd Cong., 1st Sess. 16–17 (1973).

9. The Court made no distinction between a secured creditor's possessory rights in tangible property and intangible property.

for the Service at the hearing, the IRS would release its levy. *See* Treas.Reg. § 301.6332–1(b). And that is precisely what *Whiting Pools, National Bank of Commerce,* and *Challenge Air* would predict as well, for the levy *itself* does not transfer full ownership, any more than does a secured creditor's exercising its rights under § 9–503 of the UCC.[10] And just as surely as a bankruptcy filing would interrupt a secured creditor's rights in accounts receivable (certainly in those yet to be actually collected), so also is it logical to conclude that bankruptcy has precisely the same impact on the IRS' levy on accounts receivable.[11] *See also United States v. Lewis (In re Lewis),* 142 B.R. 952, 956 (D.Colo.1992) (rejects IRS' argument, as contrary to the Supreme Court's teaching in *Whiting Pools* );[12] *Metro Press, Inc. v. United States (In re Metro Press, Inc.),* 139 B.R. 763 (Bankr.D.Mass.1992); *Flynn's Speedy Printing, Inc. v. Southtrust Bank of Pinellas County (Matter of Flynn's Speedy Printing, Inc.),* 136 B.R. 299 (Bankr.M.D.Fla.1992); *West Aire, Inc. v. United States (In re West Aire, Inc.),* 131 B.R. 871 (Bankr.D.Nev.1991); *In re Kirk,* 100 B.R. 85 (Bankr.M.D.Fla.1989); *In re AIC Industries, Inc.,* 83 B.R. 774 (Bankr. D.Colo.1988); *Matter of Bristol Convalescent Home,* 12 B.R. 448 (Bankr.D.Conn. 1981); *In re Health America of Florida, Inc.,* 22 B.R. 268 (Bankr.M.D.Fla.1982); *Maislin Industries, U.S. v. A.J. Hollander Co.,* 69 B.R. 771 (E.D.Mich.1986); *In re*

*Aaronics Equipment Rentals & Sales, Inc.,* 56 B.R. 297 (Bankr.M.D.La.1985); *In re Davis,* 35 B.R. 795 (Bankr.W.D.Wash. 1983); *In re Hudson Valley Ambulance Serv., Inc.,* 11 B.R. 860 (Bankr.S.D.N.Y. 1981); *contra Brown v. Evanston Bank (In re Brown),* 126 B.R. 767 (N.D.Ill.1991); *Rose v. Commercial National Bank (In re Rose),* 112 B.R. 12 (Bankr.E.D.Tex.1989); *In re Professional Technical Services, Inc.,* 71 B.R. 946 (Bankr.E.D.Mo.1987); *In re Paul,* 85 B.R. 850 (Bankr.E.D.Cal.1988).

### CONCLUSION

For all of the foregoing reasons, the court concludes that the IRS' levy on the debtor's accounts receivable did not divest the bankruptcy estate of any property interest in said accounts, so they may indeed be used by the debtor, subject to appropriate adequate protection arrangements. A separate order will be entered in fact memorializing those arrangements.

---

**10.** Indeed, section 6332(c) of the Internal Revenue Code gives a 21–day window between levy and liability ("any bank … shall surrender … any deposits … only after 21 days after service of levy"). The interest earned on that fund for that 21 days is treated as income *to the taxpayer,* which of course would be quite impossible if the levy transferred *ownership* of the account to the United States effective the date of the levy. *See Matter of Flynn's Speedy Printing, Inc.,* 136 B.R. 299, 301 (Bankr.M.D.Fla.1992).

**11.** The rule might indeed be different with respect to monies already paid to the IRS pursuant to a levy prior to the bankruptcy filing. *See In re Debmar Corp.,* 21 B.R. 858 (Bankr.S.D.Fla. 1982).

**12.** Said the Senior District Judge Kane in responding to the very argument the IRS urges here,

> While there is a certain Machiavellian charm to this argument, I reject it as contrary to the Court's teaching in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).… It matters not, as the government suggests, that the property is cash or a cash equivalent instead of tangible property. *In re Challenge Air Intern., Inc.,* 952 F.2d 384 (11th Cir.1992). The tax code permits the IRS to act as a lienor, not as an owner. The enforcement provisions of the code "do not transfer ownership of the property to the United States." 462 U.S. at 210, 103 S.Ct. at 2316.

*Id.*