**In re Lauraanne GIAIMO, Debtor.**

**Lauraanne GIAIMO, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 4:95CV854 CDP.**

United States District Court,
E.D. Missouri,
Eastern Division.

April 4, 1996.

Jeffrey A. Dickstein, Tulsa, OK, for Lauraanne Giaimo.

Edward L. Dowd, Jr., Office of U.S. Attorney, St. Louis, MO, Tamera Fine, U.S. Department of Justice, Office of Special Litigation, Tax Div., Washington, DC, Thomas C. Pliske, Internal Revenue Service, District Counsel's Office, St. Louis, MO, Janet Reno, U.S. Department of Justice, Security Management Division, Washington, DC, for I.R.S.

Peter Lumaghi, Asst. U.S. Trustee, U.S. Department of Justice, Office of Trustee, St. Louis, MO.

Edwin Brzezinski, Office of U.S. Attorney, St. Louis, MO, for U.S.

### *MEMORANDUM OPINION*

PERRY, District Judge.

This matter is before the Court on appeal from an order of the United States Bankruptcy Court, which denied turnover of the

money in appellant's bank account to the bankruptcy estate and ordered the bank to release the money to the Internal Revenue Service (IRS) pursuant to a prepetition levy by the IRS. The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court held that tangible property belonging to a delinquent taxpayer that is levied but not sold by the IRS prior to the filing of a reorganization petition by the taxpayer/debtor remains the property of the debtor and is therefore subject to turnover to the debtor's bankruptcy estate under § 542 of the Bankruptcy Code. The question raised in this appeal is one that several courts have struggled with in the aftermath of *Whiting Pools*: whether the same rule requiring the turnover of tangible property applies to a debtor's intangible property such as funds in a bank account that have been levied by the IRS prior to the bankruptcy petition, but which have not actually been turned over to the IRS by the filing date.

Appellant contends that the funds in her bank account must be turned over to her bankruptcy estate, as in *Whiting Pools*, because taxpayers retain an interest in their property, including cash and cash equivalents, despite an IRS levy. Appellee contends that *Whiting Pools* applies only to tangible assets; cash and cash equivalents are distinguishable from tangible assets in that the IRS obtains ownership concurrently with the levy, because there are no further steps, such as sale of the property, that are taken with respect to cash and cash equivalents. This Court agrees with appellant and will reverse the Bankruptcy Court's order excluding the $14,198.18 in appellant's bank account from appellant's bankruptcy estate and requiring the bank to release these funds to the IRS.

## I. BACKGROUND

For purposes of this appeal, the facts are straightforward. On January 3, 1995, the IRS sent appellant Lauraanne Giaimo a Notice of Intent to Levy. On February 24, 1995, the IRS levied appellant's bank account at United Missouri Bank ("the bank") by

hand-delivering a Notice of Levy. On that date, appellant's account at the bank contained $14,198.18. The IRS sent a copy of the Notice of Levy to appellant on February 24, 1995. On February 28, 1995, appellant filed a petition for Chapter 13 bankruptcy. When appellant filed her bankruptcy petition, the bank had not yet paid to the IRS the funds levied upon.

On March 3, 1995, appellant filed an application with the Bankruptcy Court, seeking emergency relief as a result of the IRS's violation of the automatic stay provision of the Bankruptcy Code. Among other relief, appellant sought turnover of the funds in her bank account to the bankruptcy estate under 11 U.S.C. § 542. A hearing was held on March 22 and 23, 1995, at which time both parties had the opportunity to examine witnesses and introduce other evidence. The Bankruptcy Court determined that the IRS had established a prima facie case that the unpaid federal tax liability indicated in the Notices of Levy exceeded the amounts levied upon in appellant's bank account. By order dated April 6, 1995, the Bankruptcy Court denied the relief requested by appellant and ordered the bank to release the $14,198.18 in appellant's bank account to the IRS.

## II. DISCUSSION

■ A district court cannot disturb the bankruptcy court's findings of fact unless such findings are clearly erroneous. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987). However, the district court exercises *de novo* review of the bankruptcy court's conclusions of law. *Id.* The parties agree that no material findings of fact are in dispute here, that the issue before this Court is one of law, and that the *de novo* standard applies.

When a debtor files a bankruptcy petition, the Bankruptcy Code mandates creation of an "estate." In light of the congressional intent to encourage reorganization by the debtor, the bankruptcy estate is broad; it includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The bankruptcy estate includes both tangible and intangible property, property in which a

creditor has a secured interest, and property in which the debtor did not have a possessory interest at the time the petition was filed. Section 542(a) of the Bankruptcy Code, the "turnover" provision, allows the trustee to obtain possession of property which should be included in the estate but is not in the debtor's possession when the bankruptcy was commenced. *Id.* § 542(a).

In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court addressed whether tangible property (equipment, vehicles, inventory and office supplies) levied by the IRS one day before taxpayer filed a bankruptcy petition was properly included in the taxpayer's § 541 estate and subject to turnover under § 542. The Court noted that Congress "intended a broad range of property to be included in the estate," including "tangible or intangible property." *Id.* at 204–05 n. 9, 103 S.Ct. at 2313–14 n. 9. The Court then discussed § 542 and concluded that "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.* at 209, 103 S.Ct. at 2315. The Court then analyzed the levy procedure used by the IRS, and concluded that, as a general rule, there was no reason property should be excluded from the estate simply because the IRS is the creditor. *Id.* Under the Bankruptcy Code, the term "entity" in § 542 clearly encompasses the IRS, and the Court found no indication that Congress intended a special exception for the IRS. *Id.*

In the language that courts rely on in distinguishing tangible property from cash, the Court in *Whiting Pools* then noted that "[o]f course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." *Id.* at 209, 103 S.Ct. at 2316. The Court addressed whether an IRS levy on tangible property transferred ownership in the property to the IRS, and stated:

> The Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens, and are analogous to the remedies available to private secured creditors. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody. At no point does the Service's interest in the property exceed the value of the lien. The IRS is obligated to return to the debtor any surplus from a sale. Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale.... Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).

*Whiting Pools,* 462 U.S. at 210–11, 103 S.Ct. at 2316–17 (citations omitted). Although the Supreme Court never actually distinguished between tangible and intangible property, the foregoing language describes certain procedures applicable only to tangible property, such as return of surplus and tax sales.

After *Whiting Pools,* several courts concluded that the Supreme Court's decision did not encompass intangible property, such as accounts receivable and funds in a bank account. In *In re Professional Technical Services, Inc.,* 71 B.R. 946 (Bankr.E.D.Mo.1987), which many courts have subsequently relied on, the court held that accounts receivable levied prepetition by the IRS were not property of the estate. The court identified two interests that remain in the debtor when the IRS levies tangible property: (1) the debtor's right to redeem the property prior to an IRS sale (under § 6337 of the Internal Revenue Code (IRC)) and (2) the debtor's right to any surplus received upon the sale of property (under § 6342 of the IRC). *Id.* at 949. The notice and sale provisions in the IRC protect taxpayers' redemption and surplus rights in their tangible property. With respect to cash, the court concluded:

> But where the property is cash or a cash equivalent (less than the amount of the tax assessed), this Court finds no such rights to protect, thus the § 6335 procedures of notice and sale serve no purpose and are not necessary for the completion of the IRS levy. An IRS levy is completed as to cash or a cash equivalent when the procedures found in § 6331 and § 6332 of Title

26 are performed. Once completed, the debtor's interest in the property levied upon is extinguished unless some remaining interest can be identified.

*Id.* at 949–50. The court concluded by saying "[t]he ministerial action of receiving the amount withheld [from the third party] is not considered by this Court to be a substantive element necessary to completion of the levy." *Id.* at 951. Therefore, the debtor in that case had no interest in the accounts receivable and they were not subject to turnover under § 542 of the Bankruptcy Code.

■ For the reasons that follow, this Court finds that an IRS levy on money in a bank account does not transfer ownership of the money to the IRS; rather, the debtor retains sufficient interest in the intangible property before it is surrendered to the IRS such that the money is properly included in the bankruptcy estate and therefore is subject to turnover under § 542. In 1990, Congress amended the surrender provision of the IRC's levy procedures to include a "special rule for banks." This provision reads:

> Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

26 U.S.C. § 6332(c).

The regulations pertaining to this provision indicate that the depositor/taxpayer has certain rights during the 21–day holding period. First, interest on the money in the bank account that accrues during the holding period, while surrendered to the IRS, "is treated as a payment to the bank's customer." 26 C.F.R. § 301.6332–3(c)(2) (1995). It would be difficult to conclude that ownership is completely divested from the taxpayer when interest accrued during the holding period is treated as income to the taxpayer. *See In re National Center for the Employment of the Disabled,* 157 B.R. 291, 296 n. 10 (Bankr.W.D.Tex.1993); *Matter of Flynn's Speedy Printing, Inc.,* 136 B.R. 299, 301 (Bankr.M.D.Fla.1992). Second, the regulations provide the taxpayer with the right to correct errors regarding the levied upon account during the holding period:

> If a depositor believes that there is an error with respect to the levied upon account which the depositor wishes to have corrected, the depositor shall notify the district director ... to enable the district director to conduct an expeditious review of the alleged error.

26 C.F.R. § 301.6332–3(d)(1) (1995). For example, suppose the taxpayer paid the amount levied from a source other than the levied bank account to the IRS prior to the levy but the IRS had not received the money before the levy. As one bankruptcy court noted, "Would the IRS then be permitted to collect from the account debtor anyway, compelling the taxpayer to apply for a refund, or is the IRS compelled to release its levy upon payment? According to counsel for the Service at the hearing, the IRS would release the levy." *National Center,* 157 B.R. at 295–96. Presumably, the 21–day holding period provides an opportunity for the taxpayer to clarify matters in situations such as the one above before the bank actually pays the money to the IRS.

In addition, the conclusion that the taxpayer retains an interest in bank account funds during the holding period is consistent with the court's reasoning in *Professional Services:* "An IRS levy is completed as to cash or a cash equivalent when the procedures found in § 6331 and § 6332 of Title 26 are performed." *Professional Services,* 71 B.R. at 950. Section 6331 of the IRC governs levy; § 6332 governs surrender. At the time the *Professional Services* decision was issued, § 6332 required surrender to the IRS upon demand from all persons in possession, including banks. In other words, surrender technically occurred simultaneously with the levy in that the IRS had an immediate right to possession, even though the banks did not always pay the IRS at the exact time the notice of levy was issued. Since that decision, however, Congress has provided that banks shall not surrender funds in a bank account for 21 days. 26 U.S.C. § 6332(c). Therefore, under the current IRC, the levy procedures in § 6331 and § 6332 are not complete until the bank surrenders the money 21 days after service of the levy. Further, although the court in *Professional Ser-*

*vices* considered surrender by the bank a mere "ministerial act" that is not an essential step to completion of the levy, that conclusion is doubtful in light of the new 21–day holding period during which the taxpayer has the express right to challenge the levy.

The conclusion in *Whiting Pools* that ownership of tangible property is transferred to the IRS at the point of the tax sale is also instructive in light of language contained in the IRC. *Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2317. The Court's holding with respect to tangible property is consistent with § 6342 of the IRC, which governs application of the proceeds of a levy. 26 U.S.C. § 6342. Section 6342 instructs the IRS on how to apply "money realized" from the levy. The threshold provision of § 6342 reads: "Any money realized by proceedings under this subchapter (*whether by seizure, by surrender under section 6332 . . . or by sale of seized property* ) . . ." *Id.* § 6342(a) (emphasis added). This section, therefore, clearly does not contemplate "money realized" by the levy itself. Rather there must be seizure, surrender or sale. In the case of tangible property, money is generally realized at the sale, as noted in *Whiting Pools;* with respect to bank accounts, the money is realized by the IRS when surrendered 21 days after the levy.

Finally, at least one key policy reason relied on by the Supreme Court in *Whiting Pools* applies equally to cash and tangible property. The Court noted that the bankruptcy estate is broad, and stated that one reason is because assets of the debtor would be more valuable if used to rehabilitate a business than if "sold for scrap." *Id.* at 203, 103 S.Ct. at 2312–13. This reason applies only to tangible property. However, the Court also noted that "[b]y permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners." *Id.* This policy reason applies to cash and cash equivalents as much if not more as to tangible property. *In re Davis,* 35 B.R. 795, 799 (Bankr.W.D.Wash. 1983).

The IRS argues that turnover is not appropriate because it is entitled to the benefits of § 363 of the Bankruptcy Code, which requires "adequate protection." *Whiting Pools,* 462 U.S. at 203–04, 103 S.Ct. at 2313. The IRS contends that "appellant admittedly cannot provide the government with adequate protection under Section 363(e) of the Bankruptcy Code," and therefore appellant is not entitled to turnover. Appellant did not address the adequate protection issue in her briefs to this Court. The Court finds that this is not a reason to hold that turnover is inappropriate as the Bankruptcy Court will have the opportunity to address any adequate protection argument that may be properly raised before it once the funds are made a part of the bankruptcy estate.

Because appellant retained an interest in the bank account funds totaling $14,198.18 levied prepetition by the IRS, she was entitled to turnover of those funds to the bankruptcy estate, and the Bankruptcy Court's order denying turnover, and ordering United Missouri Bank to release the funds to the IRS is reversed.

A separate Judgment in accordance with this opinion is entered this date.